## McNUTT, GOVERNOR OF INDIANA, ET AL. v. GENERAL MOTORS ACCEPTANCE CORP.

No. 709.   Argued April 1, 1936.—Decided May 18, 1936.

*Mr. Joseph W. Hutchinson,* Assistant Attorney General of Indiana, and *Mr. Leo M. Gardner,* with whom *Mr. Philip Lutz, Jr.,* Attorney General, was on the brief, for appellants.

*Messrs. John Thomas Smith* and *Phillip W. Haberman,* with whom *Messrs. Duane R. Dills, Stanley B. Ecker,* and *Paul Y. Davis* were on the brief, for appellee.

Mr. Chief Justice Hughes delivered the opinion of the Court.

Respondent, General Motors Acceptance Corporation of Indiana, brought this suit to restrain the enforcement of Chapter 231 of the Acts of 1935 of the General Assembly of Indiana. That Act provides for the regulation of the business of purchasing contracts arising out of retail installment sales, including provisions for licenses, for classifications of contracts, and for fixing maximum "finance charges." The validity of the Act was challenged as depriving respondent of its property without due process of law and denying it the equal protection of the laws in violation of the Fourteenth Amendment of the Federal Constitution. An interlocutory injunction was sought and, upon hearing by three judges (28 U. S. C. 380), a final decree was entered, upon findings of facts and conclusions of law, granting a permanent injunction. No opinion was rendered. The case comes here by direct appeal.

The question arises whether the matter in controversy exceeds the sum or value of $3,000, exclusive of interest and costs, so as to give the District Court jurisdiction. Jud. Code, § 24 (1), 28 U. S. C. 41 (1). The complaint alleged that the requisite amount was involved and this

allegation was denied by the answer. On the argument in this Court, leave was given to file an additional brief upon the question of jurisdiction and respondent has submitted its brief accordingly.

Respondent points to the allegations of its bill that the "net worth" of its business exceeds $50,000; that in 1934 it purchased retail installment contracts in Indiana aggregating in excess of $7,000,000; that the value of such purchases for the first six months of 1935 was in excess of $4,000,000; and that during 1934 respondent purchased in Indiana approximately 23,000 installment sales contracts from more than 500 retail dealers. These allegations were sustained by the findings of the District Court. The bill also alleged that respondent maintained offices in Indiana for which it paid yearly an aggregate rental of $13,147; that it employed on the average 85 employees whose aggregate annual salaries amounted to about $150,000. Respondent also refers to its allegations that the Act limits the amount which respondent "may receive as its gross profit for the purchase of an installment contract to a sum not exceeding the maximum 'finance charge' which may be fixed by the Department of Financial Institutions,"—by prohibiting respondent "from purchasing any retail installment contracts at a less price than the unpaid balance thereon"; that the Act limits the amount which may be given by respondent "to retail sellers out of the gross 'finance charge' received from retail buyers under installment sale contracts" sold to respondent, by requiring the Department "to fix this maximum amount without regard to any differentiation as between contracts sold to licensees by retail sellers with recourse against such sellers, and contracts sold by retail sellers without recourse against them; and that in other respects the statute imposes burdensome requirements which impair the "efficiency of the operations and earnings" of respondent.

Respondent invokes the principle that jurisdiction is to be tested by the value of the object or right to be protected against interference. *Hunt* v. *New York Cotton Exchange*, 205 U. S. 322; *Bitterman* v. *Louisville & Nashville R. Co.*, 207 U. S. 205; *Berryman* v. *Whitman College*, 222 U. S. 334; *Glenwood Light Co.* v. *Mutual Light Co.*, 239 U. S. 121; *Healy* v. *Ratta*, 292 U. S. 263. But in the instant case, the statute does not attempt to prevent respondent from conducting its business. There is no showing that it cannot obtain a license and proceed with its operations. The value or net worth of the business which respondent transacts in Indiana is not involved save to the extent that it may be affected by the incidence of the statutory regulation. The object or right to be protected against unconstitutional interference is the right to be free of that regulation. The value of that right may be measured by the loss, if any, which would follow the enforcement of the rules prescribed. The particular allegations of respondent's bill as to the extent or value of its business throw no light upon that subject. They fail to set forth any facts showing what, if any, curtailment of business and consequent loss the enforcement of the statute would involve. The bill is thus destitute of any appropriate allegation as to jurisdictional amount save the general allegation that the matter in controversy exceeds $3,000. That allegation was put in issue and the record discloses neither finding nor evidence to sustain it.

In the absence of any showing in the record to support that general allegation, the question is upon which party lay the burden of proof. Respondent contends that the burden of proving the lack of jurisdiction rests upon the party challenging the jurisdiction and cites decisions of this Court to that effect. The question is thus sharply presented.

The jurisdiction of the District Court in a civil suit of this nature is definitely limited by statute to one— "where the matter in controversy exceeds, exclusive of interest and costs, the sum or value of $3,000, and (a) arises under the Constitution or laws of the United States, or treaties made, or which shall be made, under their authority, or (b) is between citizens of different States, or (c) is between citizens of a State and foreign States, citizens or subjects." Jud. Code, § 24 (1), 28 U. S. C. 41 (1).

Further, the Act of March 3, 1875, c. 137, § 5 (18 Stat. 472) as now applied to the District Courts (Jud. Code, § 37, 28 U. S. C. 80), explicitly charges those courts with the duty of enforcing these jurisdictional limitations. The provision in its present form is as follows:

"If in any suit commenced in a District Court, or removed from a state court to a District Court of the United States, it shall appear to the satisfaction of the said District Court, at any time after such suit has been brought or removed thereto, that such suit does not really and substantially involve a dispute or controversy properly within the jurisdiction of said District Court, or that the parties to said suit have been improperly or collusively made or joined, either as plaintiffs or defendants, for the purpose of creating a case cognizable or removable under this chapter, the said District Court shall proceed no further therein, but shall dismiss the suit or remand it to the court from which it was removed, as justice may require, and shall make such order as to costs as shall be just."

It is incumbent upon the plaintiff properly to allege the jurisdictional facts, according to the nature of the case. "Where the law gives no rule, the demand of the plaintiff must furnish one; but where the law gives the rule, the legal cause of action, and not the plaintiff's demand, must be regarded." *Wilson* v. *Daniel*, 3 Dall.

401, 407, 408; *Barry* v. *Edmunds,* 116 U. S. 550, 560; *Vance* v. *Vandercook Co. (No. 2),* 170 U. S. 468, 481; *Lion Bonding Co.* v. *Karatz,* 262 U. S. 77, 85, 86. Where the pleadings properly alleged the jurisdictional facts, as for example, with respect to diversity of citizenship and jurisdictional amount, it was necessary at common law, and before the passage of the Act of 1875, to raise the issue of want of jurisdiction by plea in abatement. And where the jurisdictional issue was thus raised, the burden of proof was upon the defendant. The objection was waived by pleading to the merits. *De Wolf* v. *Rabaud,* 1 Pet. 476, 498; *Sheppard* v. *Graves,* 14 How. 505, 510; *De Sobry* v. *Nicholson,* 3 Wall. 420, 423; *Farmington* v. *Pillsbury,* 114 U. S. 138, 143. In equity, the defense could be presented by plea or demurrer but not by answer. *Livingston's Executrix* v. *Story,* 11 Pet. 351, 393; *De Sobry* v. *Nicholson, supra; Hunt* v. *New York Cotton Exchange,* 205 U. S. 322, 333. Demurrers and pleas were abolished by Rule 29 of the Equity Rules promulgated in 1912. 226 U. S., appendix p. 8.

By the Conformity Act of 1872 (17 Stat. 197; R. S. 914; 28 U. S. C. 724) all defenses in civil actions at law were made available to a defendant in the federal courts under any form of plea, answer or demurrer which would have been open to him under like pleading in the courts of the State within which the federal court was held. In that view we decided that where, under the Nebraska Code of Civil Procedure, the answer took the place of all pleas at common law, in abatement or to the merits, the allegation of the citizenship of the parties, which was properly made in the petition and put in issue by the answer, must be proved by the plaintiff. And where the record showed "no proof or finding upon this essential point" the judgment was reversed for want of jurisdiction. *Roberts* v. *Lewis,* 144 U. S. 653, 656–658. See, to

the same effect, *W. L. Wells Co.* v. *Gastonia Cotton Co.,* 198 U. S. 177, 182.

The Act of 1875, in placing upon the trial court the duty of enforcing the statutory limitations as to jurisdiction by dismissing or remanding the cause at any time when the lack of jurisdiction appears, applies to both actions at law and suits in equity. The trial court is not bound by the pleadings of the parties, but may, of its own motion, if led to believe that its jurisdiction is not properly invoked, "inquire into the facts as they really exist." *Wetmore* v. *Rymer,* 169 U. S. 115, 120; *Gilbert* v. *David,* 235 U. S. 561, 567; *North Pacific Steamship Co.* v. *Soley,* 257 U. S. 216, 221. This Court has had occasion to consider the application of the statute under varying conditions. See *Barry* v. *Edmunds, supra; Morris* v. *Gilmer,* 129 U. S. 315; *Deputron* v. *Young,* 134·U. S. 241; *Anderson* v. *Watt,* 138 U. S. 694, 701; *Wetmore* v. *Rymer, supra; Steigleder* v. *McQuesten,* 198 U. S. 141, 143; *Gilbert* v. *David, supra; North Pacific Steamship Co.* v. *Soley, supra; Broad-Grace Arcade Corp.* v. *Bright,* 284 U. S. 588.

In *Anderson* v. *Watt, supra,* a suit in equity, the Court said that under the Act of 1875 "the objection to the jurisdiction upon a denial of the averment of citizenship is not confined to a plea in abatement or a demurrer, but may be taken in the answer, and the time at which it may be raised is not restricted." In *Wetmore* v. *Rymer, supra,* an action of ejectment, after a verdict and judgment for the plaintiff, the trial court set them aside and entertained defendant's motion to dismiss for want of jurisdiction, giving leave to both parties to file affidavits showing the value of the land in controversy. Upon consideration of the evidence, the trial court decided that the jurisdictional amount was not involved. This Court disagreed with that conclusion. Speaking of the effect of

the Act of 1875, the Court observed that the statute did not prescribe any particular mode in which the question of jurisdiction was to be brought to the attention of the court, nor how, when raised, it should be determined. The Court said: "When such a question arises in an action at law its decision would usually depend upon matters of fact, and also usually involves a denial of formal, but necessary, allegations, contained in the plaintiff's declaration or complaint. Such a case would be presented when the plaintiff's allegation that the controversy was between citizens of different States, or when, as in the present case, the allegation that the matter in dispute was of sufficient value to give the court jurisdiction was denied.—In such cases, whether the question was raised by the defendant or by the court on its own motion, the court might doubtless order the issue to be tried by the jury." But "the questions might arise in such a shape that the court might consider and determine them without the intervention of a jury" and "it would appear to have been the intention of Congress to leave the mode of raising and trying such issues to the discretion of the trial judge."

In *Gilbert* v. *David, supra,* an action at law in the federal court in Connecticut, the question arose with respect to the citizenship of the plaintiff—which was put in issue by defendants' answer. Later, defendants moved to dismiss the cause for want of jurisdiction. Plaintiff then moved to strike that motion from the files upon the ground that it was an irregular method of raising the question and because the matter was already in issue under the pleadings. Taking that view, the trial court directed the trial to proceed upon the question of jurisdiction, and upon hearing the testimony the court found that both parties were citizens of Connecticut and dismissed the action. The judgment was affirmed by this Court. The Court said: "Under the former practice,

before the passage of the Act of 1875 . . . it was necessary to raise the issue of citizenship by a plea in abatement, when the pleadings properly averred the citizenship of the parties. . . . The objection may be made now by answer before answering to the merits, or it may be made by motion. . . . It may be raised by a general denial in the answer, where the state practice permits of that course. *Roberts* v. *Lewis*, 144 U. S. 653. In the State of Connecticut, under the form of denial contained in this answer, the answer raised the issue. . . . Moreover, the parties to the suit regarded the matter as at issue under the pleadings, and it was so held by the court. . . . The question was properly before the court." The Court further held that while the question might have been submitted to the jury, the trial court was not bound to take that course and that it was its privilege to dispose of the issue upon the testimony. From the citation of *Roberts* v. *Lewis, supra,* it is apparent that the Court considered that the burden of proof upon the issue of citizenship was upon the plaintiff, and it also appeared from the record that the plaintiff assumed that burden upon the trial.

In *North Pacific Steamship Co.* v. *Soley, supra,* the suit was in equity and the question was whether the jurisdictional amount was involved. The plaintiff's allegation to that effect was denied by the answer. Upon hearing the evidence offered by the complainant, and that of the defendant, the trial court held that the jurisdictional amount was not involved and dismissed the suit. On direct appeal to this Court, under the former practice where jurisdictional questions alone were presented, the Court said: "The objection that jurisdiction to entertain the suit did not exist is one which may be taken by answer. *Anderson* v. *Watt,* 138 U. S. 694. Indeed, under § 37 it is the duty of the court, when it shall appear to its satisfaction that the suit does not really and substan-

tially involve the necessary amount to give it jurisdiction, to dismiss the same, and this the court may do whether the parties raise the question or not. In the present case the issue was raised by answer, and, therefore, it became necessary for the court to determine the question of jurisdiction upon the facts presented, and when brought directly here, it is the duty of this court to review the decision upon the testimony as one presenting a jurisdictional question." The Court then considered the facts and sustained the ruling of the District Court.

The question of the burden of proof was considered by this Court in *Chase* v. *Wetzlar,* 225 U. S. 79. That was a suit in equity in the federal court in New York to enforce "equitable liens upon or claims to the title of personal property," and jurisdiction depended on the presence of the property within the district. 18 Stat. 472; Jud. Code, § 57; 28 U. S. C. 118. The allegation of the bill that the property was within the district was traversed by the plea, which was held to be "sufficient in law and form," and to which a general replication was filed. The case was heard upon the pleadings and the trial court ruled that the burden was upon the complainant to establish the existence of the essential jurisdictional facts which the plea traversed, and as no proof had been offered by the complainant the bill was dismissed for the lack of jurisdiction. On direct appeal this Court affirmed the decree.

As to the contention that the defendant was bound to prove the allegations of his plea, the Court observed: "The theory as to the burden of proof being on the defendant, on which this proposition proceeds, it is insisted, is sanctioned by the following decisions of this court: *Sheppard* v. *Graves* (1852), 14 How. 505; *De Sobry* v. *Nicholson* (1865), 3 Wall. 420; *Wetmore* v. *Rymer* (1898), 169 U. S. 115; *Hunt* v. *New York Cotton Exchange* (1907), 205 U. S. 322. And a decision of the Cir-

cuit Court of Appeals for the Eighth Circuit in *Hill* v. *Walker*, 167 Fed. 241, is also referred to as containing a full summary of the decided cases on the subject." The Court distinguished those cases upon the ground that none of them involved the question of jurisdiction under the statute requiring the presence of property within the district. In view of that distinction, the Court thought it unnecessary "to now consider the conflict of opinion which has sometimes arisen concerning whether the doctrine of the cases relied upon and the fundamental conception upon which those cases rested entirely harmonizes with the provision of the act of 1875 requiring a Federal court of its own motion to dismiss a pending suit when it is found not to be really within its jurisdiction—see *Roberts* v. *Lewis*, 144 U. S. 653, and the cases cited in the dissenting opinion in *Hill* v. *Walker*, *supra*," because the Court thought that the doctrine was inapplicable to the case before it. The existence of property within the jurisdiction was deemed to be such a fundamental prerequisite to the exercise of power to render a binding decree that in no possible view could it be said that the plaintiff did not have the burden of proving the essential jurisdictional fact. The Court concluded its discussion of the point by saying: "In other words, even putting aside for the sake of argument the effect on the doctrines announced in the decisions relied upon of the enactment of the act of 1875 as to the duty to dismiss to which we have referred, the burden of proof to establish that the court was vested with power to act, we think, in a case like this, in the nature of things rested upon the complainant." *Chase* v. *Wetzlar*, *supra*, pp. 85–87.

The question which was thus suggested and put aside in *Chase* v. *Wetzlar* is definitely before us in the instant case and should be decided. The Act of 1875 prescribes a uniform rule and there should be a consistent practice in dealing with jurisdictional questions. We think that

the terms and implications of the Act leave no suffcient ground for varying rules as to the burden of proof. The prerequisites to the exercise of jurisdiction are specifically defined and the plain import of the statute is that the District Court is vested with authority to inquire at any time whether these conditions have been met. They are conditions which must be met by the party who seeks the exercise of jurisdiction in his favor. He must allege in his pleading the facts essential to show jurisdiction. If he fails to make the necessary allegations he has no standing. If he does make them, an inquiry into the existence of jurisdiction is obviously for the purpose of determining whether the facts support his allegations. In the nature of things, the authorized inquiry is primarily directed to the one who claims that the power of the court should be exerted in his behalf. As he is seeking relief subject to this supervision, it follows that he must carry throughout the litigation the burden of showing that he is properly in court. The authority which the statute vests in the court to enforce the limitations of its jurisdiction precludes the idea that jurisdiction may be maintained by mere averment or that the party asserting jurisdiction may be relieved of his burden by any formal procedure. If his allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof. And where they are not so challenged the court may still insist that the jurisdictional facts be established or the case be dismissed, and for that purpose the court may demand that the party alleging jurisdiction justify his allegations by a preponderance of evidence. We think that only in this way may the practice of the District Courts be harmonized with the true intent of the statute which clothes them with adequate authority and imposes upon them a correlative duty.

Here, the allegation in the bill of complaint as to jurisdictional amount was traversed by the answer. The court made no adequate finding upon that issue of fact, and the record contains no evidence to support the allegation of the bill. There was thus no showing that the District Court had jurisdiction and the bill should have been dismissed upon that ground.

The decree is reversed and the cause is remanded to the District Court with directions to dismiss the bill of complaint for the want of jurisdiction.

*Reversed.*

MR. JUSTICE STONE took no part in the consideration and decision of this case.