Anne ARNOLD and Edward E. Arnold,
Plaintiffs-Appellants,

v.

Tex TROCCOLI, also known as "Tex Barton," Defendant-Appellee.

No. 174, Docket 29075.

United States Court of Appeals
Second Circuit.

Argued Nov. 17, 1964.

Decided May 3, 1965.

Richard W. O'Brien, New York City, for plaintiffs-appellants.

Charles Bakos, New York City (Benson & Morris, New York City, on the brief), for defendant-appellee.

Before LUMBARD, Chief Judge, and MEDINA and MARSHALL, Circuit Judges.

LUMBARD, Chief Judge.

This appeal raises the important question of the power of the district court to dismiss diversity suits when it is apparent to a legal certainty that the plaintiff cannot recover as much as "in excess of $10,000," the minimum amount required to confer federal jurisdiction in diversity suits. See 28 U.S.C. § 1332(a).

Anne Arnold appeals from a dismissal of her diversity suit by the district court because her claim of $15,000 damages for personal injuries, allegedly suffered when the car in which she was riding, with her husband as driver, was forced to a sudden stop on September 19, 1959, at Broadway and Dyckman Street, Manhattan, was a colorable claim "asserted for the sole purpose of conferring federal jurisdiction." See Saint Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289, 58 S.Ct. 586, 82 L.Ed. 845 (1938). We affirm.

On December 2, 1959 Anne Arnold commenced suit against the defendant in the City Court (now the Civil Court) of the City of New York, in New York County, and asked $6,000 in damages. Nine months later, on September 15, 1960, she discontinued that action and a few days thereafter, on October 3, 1960, this suit was commenced in the Southern District of New York in which she demanded $15,000.[1] Plaintiffs duly demanded a jury trial.

In his answer defendant denied the existence of a controversy in excess of $10,000, and later, the defendant moved to dismiss the complaint on the ground that the claim for $15,000 was colorable and fell short of the jurisdictional requirement by not being in excess of $10,000. When Judge Levet heard argument on the motion on May 15, 1964 and inquired as to the injuries, plaintiff's counsel replied that the only permanent injuries were minor headaches. After the judge was advised of the prior suit in the City Court he sought to find out what caused plaintiff to increase her claim of December 1959 from $6,000 to one for $15,000 in the following October. It developed that in an affidavit dated July 6, 1960 on his motion for leave to discontinue the City Court action, plaintiffs' counsel had stated "your deponent is informed that this case, because of the congestion of the calendar in the New York City Courts will not be reached for trial for at least two years after it is noticed for such trial, and that a much earlier trial can be had in a different Court."

The record does not give any support to a possible argument that plaintiff's injuries became more aggravated. On the contrary, the record shows an improvement in plaintiff's condition between December 10, 1959 and December 6, 1960, the dates of two examinations made by her physician, Jacob H. Friedman, as reported by letters of December 11, 1959[2] and December 8, 1960 to her attorney.

---

1. The plaintiff's husband also sued in federal court for $3,000, having originally sought $1,500 in the City Court action. His claim was dismissed by Judge Levet at the pretrial hearing. Although notice of appeal was also filed on behalf of Edward E. Arnold, counsel does not now dispute the dismissal of his claims by the district court. His complaint was properly dismissed as each plaintiff must claim the requisite jurisdictional amount. Kataoka v. May Dep't Stores, 115 F.2d 521 (9 Cir. 1940), cert. denied 312 U.S. 700, 61 S.Ct. 739, 85 L.Ed. 1134 (1941); Sobel v. National Fruit Prod. Co., 213 F. Supp. 564 (E.D.Pa.1962); see, Thomson v. Gaskill, 315 U.S. 442, 447, 62 S.Ct. 673, 86 L.Ed. 951 (1942); Clark v. Paul Gray, Inc., 306 U.S. 583, 589, 59 S.Ct. 744, 83 L.Ed. 1001 (1939); Hackner v. Guaranty Trust Co., 117 F.2d 95 (2 Cir.), cert. denied 313 U.S. 559, 61 S.Ct. 835, 85 L. Ed. 1520 (1941).

2. It was on this letter that plaintiff based her bill of particulars filed in the $6,000 City Court action on April 7, 1960.

The last letter states that the plaintiff "has shown improvement in her symptomatology." The only answer counsel could give to the court's repeated questioning as to why the claim had been increased from $6,000 to $15,000 was that it was the "duration of the injuries." Apparently all that happened was that Mrs. Arnold had an ordinary concussion from bumping her head on the dashboard. She never suffered any brain damage and up until 1961, and perhaps thereafter, she suffered from headaches. Medical expenses totaled $291.00, and no loss of earnings was claimed. When the court asked whether counsel wished to offer any testimony, counsel made no response. Other than the statements of counsel referred to above there was nothing before the court to explain the increase in the amount claimed.

Judge Levet concluded that the plaintiff's claim of $15,000 for personal injuries was a colorable claim "asserted for the sole purpose of conferring federal jurisdiction." He noted that plaintiff's injuries had remained constant with some improvement in "symptomatology" and this fact, taken together with the state-

ment of her counsel about desiring an earlier trial in a different court, compelled the conclusion that the claim was changed as a matter of convenience. The court dismissed the complaint with costs and without prejudice.

■ It is the duty of the federal courts to take note of any defects in jurisdiction of the cases before it so that the mandate of the statutes which limit jurisdiction will be observed. "The court, whether trial or appellate, is obliged to notice want of jurisdiction on its own motion." Wright, Federal Courts § 7 n. 8, at 15. Under the diversity jurisdiction accident claims are a substantial proportion of the civil litigation in the federal courts.[3] It is well known that very few of the many such cases brought in the federal courts result in judgments or settlements for more than $10,000.[4] The records compiled by the Judicial Conference of the State of New York, for the years 1961 through 1964, as to attorneys practicing in state and federal courts show that 97% of all accident claims result in judgments or settlements of less than $10,-000.[5] Of course this does not mean that

3. In the year ended June 30, 1964, 8,155 diversity automobile cases were filed, constituting 12% of the total civil cases filed in the federal district courts (66,930) and 40% of all the diversity cases filed (20,-174). Total diversity tort cases numbered 14,280, constituting 21% of the total civil cases filed, and 71% of all the diversity cases filed. See Table C 2, Annual Report of the Director of the Administrative Office of the United States Courts 218–19 (1964).

4. On the basis of the closing statements filed by attorneys with the Judicial Conference of the State of New York, only 17% of the tort cases terminated in the federal district courts of New York during the year ended June 30, 1964, resulted in a recovery in excess of $10,000. See Tenth Annual Report of the Judicial Conference of the State of New York 172 (1965).

Closing statements, giving details of termination of tort and condemnation matters in which contingent fee arrangements have been made, must be filed by attorneys in the First and Second Judicial Departments (which includes all of New

York City and the surrounding counties), and in tort matters only by attorneys retained on a contingent fee basis by residents of Monroe and Erie Counties (which include the cities of Buffalo and Rochester). As more than one attorney may be engaged in a given case, there are some duplications in the total cases reported.

5. In the year ended June 30, 1964, 4,202 claims brought recoveries in excess of $10,000, out of a total of 151,263 cases reported. In the year ended June 30, 1963, 4,284 recoveries out of 148,469 exceeded that figure. For the year ended June 30, 1962, 4,246 out of 146,526. For the year ended June 30, 1961, 3,604 out of 134,886. In each instance, the recoveries in excess of $10,000 number approximately 3% of the total reported by the Judicial Conference. Indeed for 1964 these figures show that 81% of all claims result in judgments or settlements under $2,000. Figures for years prior to 1961 are not available. See Annual Reports of the Judicial Conference of the State of New York, 10th Annual Rep. at 172 (1965); 9th Annual Rep. at 216 (1964); 8th An-

97% of the cases could not have involved claims made in good faith for damages exceeding $10,000. But it is striking support of what every judge in our courts knows to be true—that in only about one accident case in every twenty can there be a reasonable expectation that more than $10,000 will be recovered. It has long been apparent that despite these facts litigants and their counsel nevertheless invoke federal jurisdiction by claiming damages in excess of the jurisdiction minimum, which has been in excess of "$10,000, exclusive of interest and costs," since the 1958 amendment of 28 U.S.C. § 1332. (P.L. 85–554, § 2, 72 Stat. 415.)

■■ With mounting caseloads in our metropolitan centers, and increasing numbers of cases awaiting trial, it has become doubly important that the district courts take measures to discover those suits which ought never to have been brought in the federal court and to dismiss them when the court is convinced to a legal certainty that the plaintiff cannot recover an amount in excess of $10,000. St. Paul Mercury Indem. Co. v. Red Cab Co., supra, 303 U.S. at 289, 58 S.Ct. 586. The plaintiff always has the burden of showing that the district court has jurisdiction (McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 188–189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); it would seem entirely appropriate for the court to require a plaintiff to make a preliminary showing in any case, such as that of Mrs. Arnold, where the possibility of a recovery in the neighborhood of $10,000 seems quite remote. Judge Bonsal's dismissal of the complaint in Olster v. Kiamesha Concord, Inc., 232 F.Supp. 393 (S.D.N.Y.1964) is another example of salutary and summary treatment of litigation which falls short of federal standards.

The purpose of Congress in excluding from federal courts claims which do not exceed $10,000 will be largely thwarted if the district courts fail to act as the district court did here. The Senate Report accompanying the 1958 jurisdiction bill expressed the hope that the increase in jurisdictional amount would result in a 10% decrease in the number of tort cases. S.Rep. 1830, U.S.Code Cong. and Admin. News, 85th Cong. 2d Sess. 3099, 3103 (1958). The figures published by the Administrative Office of the United States Courts indicate that such a reduction has not taken place; on the contrary, the number has increased. In the year ended June 30, 1956, 12,563 diversity tort cases were filed in the district courts. This figure is 14,280 for the year ended June 30, 1964.[6] Nor has the number of diversity tort cases as a percentage of the total civil cases filed in the federal courts decreased during this period.[7] While part of this unexpected increase may be due to the greater number of such cases litigated each year, the major cause would seem to be that plaintiffs have increased the amount of their claims to meet the more stringent jurisdictional requirement.[8]

nual Rep. at 129 (1963); 7th Annual Rep. at 150 (1962). See also n. 4 supra.

**6.** Figures for the intervening years are: 1957—14,954; 1958—16,529; 1959—12,568; 1960—12,661; 1961—12,498; 1962—13,181; 1963—13,400. These figures include personal injury claims arising out of automobile, airplane and maritime accidents, other negligent and intentional torts, fraud, and tortious injuries to real and personal property. Federal Employers' Liability Act claims, 45 U.S.C. §§ 51–60, and maritime claims brought under the admiralty jurisdiction are not included. See, Annual Reports of the Director of the Administrative Office of the United States Courts, Table C 2. 1957 and 1958 are probably not representative as the increases were undoubtedly due to the impending legislation to increase the jurisdictional minimum.

**7.** Between 1956 and 1964, the figure has remained close to 20% or 21% with the exception of the years just prior to the 1958 act when the figure rose to 25%. Between 1956 and 1964, diversity tort cases as a percentage of total diversity cases rose from 61% to 71%. See Table C 2, supra n. 6.

**8.** At its 1958 meeting, the Judicial Conference of the United States expressed the fear that this would be the result of the legislation. Annual Report of the Judicial Conference of the United States 83 (1958).

Of course plaintiffs and their counsel should be afforded appropriate and reasonable opportunity to show good faith in believing that a recovery in excess of $10,000 is reasonably possible. And of course it would be improper for the judge to dismiss a case merely because he would not allow that amount were he to be sole trier of the facts or because he would not permit a jury verdict in that amount to stand. But here Judge Levet's action was grounded on the solid fact that suit had originally been brought for only $6,000 and there was no showing of change of circumstances or developing injuries to explain the inflation of the claim which alone gave color of federal jurisdiction. The belated discovery that litigation might move faster in the federal court or that federal pretrial procedures might be more helpful than those afforded in another court are surely no evidence of a good faith belief that damages have increased.

We affirm the order of the district court.

Barnes, Circuit Judge, dissented.