Lydia NIEVES, Plaintiff,

v.

STAMFORD HOSPITAL, Defendant.

Civ. A. No. B–22.

United States District Court,
D. Connecticut.

June 13, 1972.

Joseph N. Tauber, Stamford, Conn., for plaintiff.

Dion W. Moore, Bridgeport, Conn. (Pullman, Comley, Bradley & Reeves, Bridgeport, Conn., on the brief), for defendant.

TIMBERS, Circuit Judge: *

QUESTION PRESENTED

Defendant's motion to dismiss this diversity action for lack of subject matter jurisdiction, Fed.R.Civ.P.12(b)(1), presents the question—of critical importance in the administration of federal justice in this District—whether the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, as required by 28 U.S.C. § 1332(a) (1970). After a hearing, the Court holds upon the entire record that

---

* Of the United States Court of Appeals for the Second Circuit, sitting by designation.

it appears to a legal certainty that the amount in controversy does not remotely approach the $10,000 jurisdictional requirement. Defendant's motion to dismiss is granted.

## FACTS

Plaintiff, a citizen of the Commonwealth of Puerto Rico, commenced this action on February 25, 1970, against defendant hospital, a Connecticut non-profit corporation. The complaint alleged malpractice on the part of defendant hospital in discharging plaintiff on February 28, 1969 prior to the birth of her child; in refusing to readmit her three days later; and in not giving her proper treatment in its outpatient clinic. Plaintiff demanded $35,000 damages. Jurisdiction of this Court was invoked on the ground of diversity of citizenship and requisite jurisdictional amount. 28 U.S.C. § 1332(a)(1) and (d)(1970).

The pleadings were closed by the filing of defendant's answer on April 28, 1970. Aside from admitting that defendant is a Connecticut non-profit corporation, the answer denied the material allegations of the complaint and alleged three special defenses, none of which is material to the issue raised on the instant motion.

During the course of discovery proceedings, plaintiff on July 14, 1970, in response to defendant's interrogatories, filed answers (later sworn to by plaintiff on August 13, 1970) alleging, inter alia, that the nature of the pain and suffering and emotional hardship alleged in the complaint was that "I was upset, I could not sleep or eat; I was constantly tense and unhappy." In response to the interrogatory requesting her to enumerate the amounts claimed for doctors and hospital bills, she answered, "Welfare case." And in response to the interrogatory requesting her to state any out-of-pocket expenses incurred other than doctors and hospital bills, she answered, "Taxi expenses amounting to Twenty-five [$25.00] Dollars."

At a pretrial conference held on April 14, 1971, plaintiff stated in writing that her special damages totalled $201 (the $25 taxi charge, plus a bill of Dr. De-Verone in amount of $176). At this same pretrial conference, plaintiff's settlement demand was $3,000. The Special Masters who conducted the pretrial conference (two Connecticut trial lawyers with extensive experience in the trial of negligence actions) stated in their Pretrial Report that the "[c]ase has reasonable settlement value of $1500.00." Plaintiff subsequently stated her willingness to accept $1,000 in settlement of the case. Defendant's counsel was unable to obtain authority to settle for that amount.

The status of this case first came to the attention of the undersigned at the call of the civil jury trial calendar at Bridgeport on April 3, 1972. Although plaintiff's counsel was not present at the call of the calendar because of illness, the Court was informed that plaintiff's whereabouts was unknown; that she had not appeared for her deposition which defendant had noticed to be taken on March 27, 1972; and that it was unlikely that she would appear for trial on May 1, 1972. In view of these facts and in the light of the pretrial disclosures referred to above, the undersigned, on his own initiative, suggested that defendant serve and file a motion to dismiss for lack of subject matter jurisdiction. Such motion was filed and a hearing was held on April 14, 1972. Counsel for the respective parties filed memoranda of law and were heard in oral argument.

## CONTROLLING LAW

After full consideration of the entire record, the memoranda of law and the oral arguments of counsel, the Court has concluded that this action must be dismissed for lack of subject matter jurisdiction for the reason that it appears to a legal certainty that the amount in controversy does not exceed the sum or value of $10,000, exclusive of interest and costs. 28 U.S.C. § 1332(a) (1970); St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288–89 (1938);

Arnold v. Troccoli, 344 F.2d 842, 844–46 (2 Cir. 1965); Nelson v. Keefer, 451 F. 2d 289 (3 Cir. 1971); Olster v. Kiamesha Concord, Inc., 232 F.Supp. 393 (S.D. N.Y.1964); Brown v. Bodak, 188 F. Supp. 532 (S.D.N.Y.1960). See also Givens v. W. T. Grant Company, 457 F. 2d 612 (2 Cir. 1972), petition for rehearing en banc denied (June 5, 1972); Gray v. Occidental Life Insurance Co., 387 F. 2d 935, 936 (3 Cir.), cert. denied, 391 U.S. 926 (1968); Creamer v. Mutual of Omaha Insurance Co., Civil No. 12,894 (D.Conn., filed March 28, 1972) (action remanded to Court of Common Pleas for lack of $10,000 jurisdictional amount).

■ It is the duty of the Court independently to examine the jurisdictional underpinnings of an action, whether or not any question of subject matter jurisdiction is raised by the parties; and this is especially so whenever it appears from the pleadings or otherwise that jurisdiction may be lacking. Givens v. W. T. Grant Company, *supra,* 457 F.2d at 613 n. 2, and authorities there cited.

■ Once the jurisdictional basis for an action is challenged, whether by counsel or by the court sua sponte, the burden of proof is on the party asserting jurisdiction *to prove the essential jurisdictional facts* by a preponderance of the evidence; and it is not sufficient for him merely to rely on his *averment* of jurisdiction. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936); United States v. Montreal Trust Company, 358 F.2d 239, 242 n. 4, 245 n. 2 (2 Cir.), cert. denied, 384 U.S. 919 (1966); Arnold v. Troccoli, *supra,* 344 F.2d at 845; Nelson v. Keefer, *supra,* 451 F.2d at 296. The holding of the Supreme Court on this point in a unanimous opinion by Chief Justice Hughes in *McNutt* has continuing vitality:

"The authority which the statute vests in the court to enforce the limitations of its jurisdiction precludes the idea that jurisdiction may be maintained by mere averment or that the party asserting jurisdiction may be relieved of his burden by any formal procedure. If his allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof. And where they are not so challenged the court may still insist that the jurisdictional facts be established or the case be dismissed, and for that purpose the court may demand that the party alleging jurisdiction justify his allegations by a preponderance of evidence. We think that only in this way may the practice of the District Courts be harmonized with the true intent of the statute which clothes them with adequate authority and imposes upon them a correlative duty." 298 U.S. at 189.

■ In personal injury actions where the validity of the jurisdictional amount allegation very often turns on claims for pain and suffering or permanency of the injury, we should bear in mind that "Congress intended that trial judges exercise permissible discretion *prior to trial* in adjudicating challenges to jurisdiction." Nelson v. Keefer, *supra,* 451 F.2d at 294. (Emphasis added). In an appropriate case, the record before the court as the result of discovery proceedings and a pretrial conference may well permit the court to make such determination. This is such a case. See Arnold v. Troccoli, *supra,* 344 F.2d at 843–44, 846; Nelson v. Keefer, *supra,* 451 F.2d at 291, 292, 294, 297–98; Olster v. Kiamesha Concord, Inc., *supra,* 232 F.Supp. at 394; Brown v. Bodak, *supra,* 188 F. Supp. at 533–34.

■ Finally, the importance of federal trial judges exercising firm control over their dockets, to make sure that the diversity jurisdiction of the court is not abused, greatly transcends the issues of any particular case, including this one. The Third Circuit in Nelson v. Keefer, *supra,* 451 F.2d at 294, after noting that "we [cannot] bring ourselves to believe that the congressional mandate can be thwarted by the simple expedient of inflating the complaint's *ad damnum*

clause", went on to make this very cogent observation:

> "But 'the fault is not in our stars, but in ourselves.' Because the federal judiciary has been too timid to execute the congressional mandate in personal injury actions, we have all contributed to clogging dockets, monopolizing trial rooms, and committing the expense and energies of our system to a plethora of cases which do not belong in federal courts." 451 F.2d at 295.

In our Circuit, Judge Lumbard (then Chief Judge), after stating in Arnold v. Troccoli, *supra*, 344 F.2d at 844, that "[i]t is the duty of the federal courts to take note of any defects in jurisdiction of the cases before it so that the mandate of the statutes which limit jurisdiction will be observed", referred to

> " . . . what every judge in our courts knows to be true—that in only about one accident case in every twenty can there be a reasonable expectation that more than $10,000 will be recovered. It has long been apparent that despite these facts litigants and their counsel nevertheless invoke federal jurisdiction by claiming damages in excess of the jurisdiction minimum. . . . " 344 F.2d at 845.

### WORD TO THE BAR
### OF THIS COURT

■ The urgency of close scrutiny by the District Court for the District of Connecticut of the validity of jurisdictional amount allegations in diversity accident cases is sharply emphasized by the following statistical comparisons between filings of diversity accident cases in the District of Connecticut, the Southern District of New York and the Eastern District of New York for the fiscal years 1960, 1965 and 1970:[1]

|  | FY 1960 | FY 1965 | FY 1970 |
|---|---|---|---|
| Second Circuit Total | 2,202 | 1,029 | 888 |
| District of Connecticut | 100 | 96 | 95 |
| Southern District of New York | 1,520 | 488 | 276 |
| Eastern District of New York | 297 | 131 | 154 |

As these statistics show, during the ten year period covered the filings of diversity accident cases throughout the Circuit was reduced by almost two-thirds; in the Eastern District of New York, by approximately one-half; and in the Southern District of New York, by more than four-fifths. During the same period of time, filings in the District of Connecticut remained virtually constant. This Court takes judicial notice that one of the most effective factors in the sharp reduction of filings of diversity accident cases in the Southern and Eastern Districts—two of the busiest districts in the Country—has been the word that has gone out to the bar that the judges of those districts have demonstrated their determination to dismiss prior to trial those diversity cases of demonstrably spurious jurisdictional amount. *See, e. g.*, Olster v. Kiamesha

---

1. These statistics (together with those for the Northern District of New York, the Western District of New York and the District of Vermont) were included in a report dated July 16, 1971 to all district judges of the Second Circuit by Hon. Richard H. Levet, Senior District Judge of the Southern District of New York, in which he stated in relevant part:

   "In November, 1970, Hon. J. Edward Lumbard, then Chief Judge of this Circuit, became concerned about the discrepancies among district courts in the comparable ratios of 1970 to 1960 filings of diversity accident cases, particularly in the Southern and Eastern Districts of New York. . . .

   \* \* \* \* \*

   Basically, it is my belief that greater scrutiny in all districts would result not only in fewer trials but in a diminution of filings of diversity cases throughout this Circuit.

   A limited check of diversity cases, which were referred to me for trial about two years ago, demonstrated that almost all of the diversity tort cases referred for trial are settled or determined for much less than $10,000.

   \* \* \* \* \*

   I believe that close scrutiny of these actions is worthwhile and will result in a considerable reduction in the filing of cases where only insubstantial damages can be proven."

Concord, Inc., *supra*; Brown v. Bodak, *supra*.

So far as the undersigned is concerned, the same word may go out to the bar of the District Court for the District of Connecticut. As succinctly put by the court in Nelson v. Keefer, *supra*:

"It is our intention to require removal from the trial list of those 'flagrant' cases where it can be determined in advance 'with legal certainty' that the congressional mandate of a $10,000 minimum was not satisfied." 451 F.2d at 292.

## ORDER

Ordered that defendant's motion to dismiss the action for lack of subject matter jurisdiction is granted.