**KEMP PONTIAC–CADILLAC, INC. and William G. Kemp**

v.

**HARTFORD AUTOMOBILE DEALERS' ASSOCIATION, INC., et al.**

**Civ. No. 14010.**

United States District Court,
D. Connecticut.

Aug. 5, 1974.

Ira B. Grudberg, New Haven, Conn., for plaintiffs; Sidney Lesser Hofing, Theodore A. Schvimmer, William H. Mild, Trenton, N. J., of counsel.

Everett F. Fink, Edward W. Lincoln, Jr., Valentine J. Sacco, William R. Moll-

er, Wesley W. Horton, Martin A. Gould, W. R. Hartigan, Richard M. Reynolds, Joseph F. Skelley, Jr., Hartford, Conn., J. Daniel Sagarin, Bridgeport, Conn., George C. Hastings, Hartford, Conn., for defendants.

## RULING ON MOTIONS FOR SUMMARY JUDGMENT

BLUMENFELD, District Judge.

This is a private antitrust suit based on alleged violations of Sections 1 and 2 [1] of the Sherman Antitrust Act (15 U.S.C. §§ 1 and 2) claiming injury to plaintiff's business and property. The plaintiff seeks treble damages in the amount of $15,434,091.00 under § 4 of the Clayton Act (15 U.S.C. § 15) and injunctive relief under § 16 of the Clayton Act (15 U.S.C. § 26). For jurisdiction the plaintiff invokes 28 U.S.C. § 1337. [2]

1. Section 1 of the Sherman Act, 15 U.S.C. § 1, provides in pertinent part:

"Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal . . . ."

Section 2 of the Sherman Act, 15 U.S.C. § 2, provides in pertinent part:

"Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a misdemeanor . . . ."

2. Aside from general federal question jurisdiction under 28 U.S.C. § 1331, no other basis for federal jurisdiction exists. Since all of the corporate parties have their respective principal places of business in Connecticut and the natural persons are also residents of Connecticut there is no diversity of citizenship. See 28 U.S.C. § 1332.

3. The Court requested the parties to focus their attention on the question of federal jurisdiction in recognition of its well established duty to inquire on its own motion into the adequacy of jurisdictional allegations. Baer v. United Services Automobile Assn., 503 F.2d 393, 396 (2d Cir. 1974); Givens v. W. T. Grant Co., 457 F.2d 612, 613, n. 2 (2d Cir. 1972); Nieves v. Stamford Hospital, 345 F.Supp. 1014, 1016 (D.Conn.1972). "The trial court is not bound by the pleadings of the parties, but may, of its own motion, if led to believe that its jurisdiction is

This matter is before the Court on motions by the several defendants for summary judgment. The decisions to file these motions apparently were induced by this Court's Pre-Trial Order No. 1 which in part provided that "Since the only basis for federal jurisdiction in this case would seem to be an alleged violation of the Sherman Act, the plaintiff is directed to set out specifically the facts upon which such jurisdiction can be predicated." With respect to this and other issues the plaintiff was ordered to "(1) outline the evidence which it proposes to offer to prove the facts relevant to each issue; (2) list as to each issue the witnesses and the general nature of the testimony each witness will give; and (3) list the exhibits it proposes to offer in support of each issue." [3]

not properly invoked, 'inquire into the facts as they really exist.'" McNutt v. General Motors Corp., 298 U.S. 178, 184, 56 S.Ct. 780, 783, 80 L.Ed. 1135 (1936). Such inquiry is especially important in antitrust cases, which generally have the potential, already demonstrated in this case, for development into protracted litigation.

Since the pre-trial order directed the plaintiff to "set out specifically the facts upon which such jurisdiction can be predicated," and since the plaintiff bears the burden of establishing jurisdiction, McNutt v. General Motors Corp., supra, 298 U.S. at 189, 56 S. Ct. 780, the Court might be justified in considering the briefs, affidavits, and other matters submitted in response thereto under a preponderance of the evidence standard in regard to the existence of jurisdiction. But since the facts alleged to confer jurisdiction on the Court are entwined with the merits of this case and are thus at issue in the motions for summary judgment of the defendant automobile dealers and associations, the Court will apply the more rigorous evidentiary standard for summary judgment, as set out in Rules 56(c) and (e), Fed.R.Civ.P. This will insure that if "under the guise of determining jurisdiction, the merits of the controversy between the parties be summarily decided without the ordinary incidents of trial, including the right to a jury," Smithers v. Smith, 204 U.S. 632, 645, 27 S.Ct. 297, 300, 51 L.Ed. 656 (1907), the plaintiff will have had the benefit of Rule 56's strictures on pre-trial adjudication of the merits. Cf. Land v. Dollar, 330 U.S. 731, 735, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); Zunamon v.

### The Nature of the Case

The complaint alleges that the plaintiff Kemp Pontiac-Cadillac, Inc.[4] (hereinafter Kemp) was a retail automobile dealer in New Britain, Connecticut, where it operated its business under franchises from General Motors for the sale of Cadillacs and Pontiacs. It alleges that it entered into the automobile business by acquiring a going dealership for Cadillacs and Pontiacs. Within three months it moved from approximately 125th in Pontiac sales in New England to the 9th largest Pontiac dealer, and within five months it was the 7th largest, doubling the employment of the preceding dealership and making millions of dollars more sales. Kemp became the single largest automotive advertiser in the history of the New Britain Herald, the largest newspaper published in New Britain.

Realizing that it could profitably serve a larger market, Kemp made plans to relocate so as to be able to serve both the metropolitan Hartford area and New Britain. Kemp took an option on a 7.56 acre tract of land in Newington, Connecticut, nearer to Hartford, and successfully petitioned General Motors Corporation for permission to relocate the dealership there. Kemp built a larger physical plant on the new location and opened for business on November 10, 1965. Kemp's business continued to grow rapidly until allegedly slowed by the impact of the unlawful combination and conspiracy hereinafter set forth.

Kemp alleges that its phenomenal growth was due primarily to two factors: (a) Kemp's creation of a highly mechanized operation which drastically cut wasted time and created cost savings which were passed on to consumers; and (b) Kemp's creative and aggressive advertising and promotion policies, involving expenditures many times that of most other automobile dealers in the Hartford area, including that of the various automobile dealer conspirators. In contrast to his self-laudatory description of his own business acumen, Kemp alleges that his competitors in the Hartford area were not competing vigorously at the time of Kemp's entry into that market: the defendant automobile dealers had relatively stable sales, low expenditures for advertising and promotion, and enjoyed the easy, profitable mode of business life they had worked out at the consumers' expense.

The principal defendants are three of the franchised Chevrolet dealers in the metropolitan Hartford area; Capitol Motors in Hartford, Dworin Chevrolet in East Hartford, and Grody Chevrolet in West Hartford. Other defendants are Resolute Insurance Company, two trade associations, The Hartford Automobile Dealers' Association, Inc., The Connecticut Automotive Trades Association, Inc. (CATA), the two daily newspapers in Hartford, The Hartford Times and The Hartford Courant, a local radio station, WPOP; and a number of individuals who are officers or employees of these corporate defendants.

In considering the issues raised by the plaintiff it will be useful to separate the defendants into two groups according to the type of conduct they are alleged to have committed. In the first group are the three named Chevrolet dealers in the Hartford area (Capitol Motors in Hartford, Grody Chevrolet in West Hartford, and Dworin Chevrolet in East Hartford) and the Resolute Insurance Company. These four defendants are alleged to have (1) violated § 1 of the Sherman Act by conspiring to restrain trade by an agreement to fix prices and (2) thereby violated § 2 of the Sherman Act by attempting to monopolize trade in automobiles.

The remaining defendants, together with the dealers, are alleged to have acted in concert to obstruct the plaintiff from advertising his Pontiacs in the de-

Brown, 418 F.2d 883, 886 (8th Cir. 1969); Fireman's Fund Ins. Co. v. Railway Express Agency, 253 F.2d 780, 784 (6th Cir. 1958).

4. William G. Kemp, its President, is also named as a plaintiff. They are treated as one.

**1386**

fendant newspapers and over the radio, and by publishing "untrue stories and accusations against Kemp Pontiac and Kemp and their advertising practices and business ethics."

Thus two separate types of causes of action are alleged; the first based on illegal price fixing, and the second on allegedly tortious interference with the plaintiff's business operations. These will be separately considered, as if set out in two counts.

**I**

*Standing to Raise Price-Fixing Claim*

Although the defendant automobile dealers' motions are addressed to the question of whether there is any factual support at all for the claims of the plaintiff and are shaped so as to meet all of the allegations of the complaint head on, the first question to which an answer should be sought is whether the plaintiff has standing to complain of the defendants' alleged violations of the antitrust laws and hence whether this Court has jurisdiction over an antitrust action brought by this particular plaintiff.

■ The plaintiff has failed to recognize the difference between public wrong and private damage. It is only when a violation of § 1 or § 2 causes direct damage to a specific individual that such a violation becomes a basis for a private cause of action by that individual. Section 4 of the Clayton Act, 15 U. S.C. § 15, provides: "Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States

. . . and shall recover [treble damages]." Thus the plaintiff herein must show that he himself has suffered damages "by reason of" an antitrust violation if he is to have standing to sue under the statute.

■ The most that this plaintiff has shown that he may be able to prove is that he sustained a loss of profits when the defendants sold a Chevrolet to a buyer who would have bought a Pontiac from him but for the defendants' allegedly wrongful business methods. But such a loss of profits through foreclosure of an opportunity to sell an automobile to a buyer victimized by the defendants' alleged Sherman Act violation is at best only an indirect loss to the plaintiff. Although the phrase "by reason of" in the statute could be read to encompass injuries, however remote, which are causally related to an antitrust violation—opening up almost limitless possibilities—the Court of Appeals for this Circuit has interpreted "by reason of" in light of its statutory setting. In this Circuit it is settled that "[t]hose harmed only incidentally by anti-trust violations have no standing to sue for treble damages; only those at whom the violation is directly aimed, or who have been directly harmed may recover." Productive Inventions, Inc. v. Trico Products Corp., 224 F.2d 678, 679 (2d Cir.1955), cert. denied 350 U.S. 936, 76 S.Ct. 301, 100 L.Ed. 818 (1956).[5] It can hardly be denied that if there was any price-fixing agreement among the defendants concerning the sales of Chevrolets, the targets were the customers who bought them, not the plaintiff who, as a competitor with unhampered ability and unrestricted freedom to compete effectively, lost the sale.[6] In order to claim

---

5. For a recent discussion of the rationale underlying the adherence to this test *see* Calderone Enterprises Corp. v. United Artists Theatre Circuit, Inc., 454 F.2d 1292, 1295 (2d Cir. 1971). *Cf.* International Railways of Cent. Amer. v. United Brands Co., 358 F.Supp. 1363 (S.D.N.Y.1973). *See also* In Re Multidistrict Vehicle Air Pollution, M.D. L. No. 31, 481 F.2d 122 (9th Cir. 1973).

6. As a basis for its claim that the alleged price-fixing agreement among the defendant automobile dealers excluded it from competing with them, the plaintiff contends that the relevant market, allegedly monopolized by the defendants, includes both the Pontiacs for which it was a dealer, and the Chevrolets sold by the defendants. That is an entirely reasonable contention for there

treble damages the plaintiff must establish not only that he "was within the target area of the illegal practices," but further that he "was not only hit, but was aimed at . . . ." Karseal Corp. v. Richfield Oil Corp., 221 F.2d 358, 365 (9th Cir.1955). Accord, Calderone Enterprises Corp. v. United Artists Theatre Circuit, Inc., 454 F.2d 1292, 1295 (2d Cir.1971). See also SCM Corp. v. Radio Corp. of Amer., 407 F.2d 166 (2d Cir., cert. denied), 395 U.S. 943, 89 S.Ct. 2014, 23 L.Ed.2d 461 (1969). This the plaintiff has not done.

### Merits of Price-Fixing Claim

Even if it is assumed that the plaintiff was directly harmed by reason of what he alleges to be antitrust violations, the defendant automobile dealers are entitled to summary judgment on the merits of the antitrust claim against them. The plaintiff has failed to set forth in response to the dealers' motions for summary judgment any "specific facts showing that there is a genuine issue for trial." [7]

There is evidence that the Resolute Insurance Company from time to time unsurreptitiously contracted with a printer to print up list prices of Chevrolets and made them available to Chevrolet dealers and salesmen, some of whom made use of them. This is the only evidence offered to support a conspiracy upon which the Court would be entitled to rely. The plaintiff has not proffered anything to contradict the defendants' evidence that the lists were nothing but handy compilations of the suggested retail prices which General Motors is required by law to include

is no requirement, as the Court said in United States v. Continental Can Co., 378 U.S. 441 at 449, 84 S.Ct. 1738 at 1743, 12 L.Ed. 2d 953 (1964), quoting from United States v. E. I. DuPont De Nemours & Co., 351 U. S. 377, at 394, 76 S.Ct. 994, 100 L.Ed. 1264: "'that products be fungible to be considered in the relevant market.'"

By urging the contention that under the test laid down in United States v. E. I. DuPont De Nemours & Co., *supra*, 351 U.S. at 404, 76 S.Ct. at 1012, and reaffirmed in Int'l. Boxing Club v. United States, 358 U.S. 242, 250, 79 S.Ct. 245, 3 L.Ed.2d 270 (1959), the plaintiff's Pontiacs and the defendants' Chevrolets are "products that have reasonable interchangeability for the purposes for which they are produced—price, use and qualities considered," the plaintiff has succeeded in emasculating its case. It is undisputed that the plaintiff never was in the business of selling any new automobiles other than Pontiacs and Cadillacs. More importantly, the plaintiff readily admits that as a franchised Pontiac dealer there was no limit on the number of Pontiacs it could have bought from its supplier for resale in its business.

The alleged agreement among the defendants did not keep Kemp from access to all of the Pontiacs it needed nor from any of the outlets for the sale of its Pontiacs. The plaintiff was not a party to the alleged agreement. There was no way in which it could be disciplined by the defendants if it failed to set the price of its Pontiacs consistently with those of the defendants. Nor was there any way in which the alleged

price-fixing agreement took away the trade freedom of the plaintiff. Curiously enough the same argument was advanced by the plaintiff in Checker Motors Corp. v. Chrysler Corp., 283 F.Supp. 876 at 882 (S.D.N.Y. 1968), aff'd, 405 F.2d 319 (2d Cir. 1969), where Judge Mansfield (now Circuit Judge) pointed out that: "[c]onduct or agreements not restricting a competitor's pricing independence . . . falls short of illegal price fixing."

7. Rule 56(e), Fed.R.Civ.P., provides:
   "(e) *Form of Affidavits; Further Testimony; Defense Required.* Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

within the "sticker" price which it must attach to every car it manufactures. See 15 U.S.C. § 1232(f)(1). There thus exists no genuine issue of fact as to the existence of a conspiracy to fix prices [8] and thereby to monopolize the sale of automobiles, and the defendant automobile dealers are accordingly entitled to summary judgment on that portion of the complaint. See Donnelly v. Guion, 467 F.2d 290, 293–294 (2d Cir.1972).

## II

### Remaining Defendants

There remain the various allegations that the several individual defendants, the automobile dealers and associations, the defendant newspapers, and the Resolute Insurance Company, conspired to instigate a strike by the plaintiff's employees, to file unfounded complaints against the plaintiff with state authorities and others, to cause untrue stories about its business practices to be circulated, and to deny it access to the advertising pages of the defendant newspapers. As the Court has already adumbrated, see note 8, *supra*, the Court has felt doubts whether every claim asserted under the rubric of "unfair competition" can by the additional allegation of joint action be brought within the scope of the Sherman Act. In the main, the acts complained of here are not directly concerned with control of economic power,

which is the main concern of the Sherman Act. For protection against wrongful interference with one's business there are the Robinson-Patman Act and state law.

Construing the claims here in issue as state law causes of action sounding in tort, the Court confronts the admonition of Judge Friendly in Kavit v. Stamm & Co., 491 F.2d 1176 at 1180 (2d Cir.1974): "If it appears that the federal claims are subject to dismissal under F.R.Civ.P. 12(b)(6) or could be disposed of on a motion for summary judgment under F.R.Civ.P. 56, the court should refrain from exercising pendent jurisdiction absent exceptional circumstances. Indeed, this is essential to avoid a result where, as has been happily said, 'the dog would be wagged by his tail.' Hart & Wechsler, The Federal Courts and the Federal System 925 (2d Ed.1973)." (Footnotes omitted). See also McFaddin Express Inc. v. Adley Corp., 346 F.2d 424 (2d Cir.1965), cert. denied 382 U.S. 1026, 86 S.Ct. 643, 15 L.Ed.2d 539 (1966). However, at the hearing on the motions for summary judgment on the issues now under consideration, counsel for the plaintiff, with commendable candor, stated in open court that he did not oppose the motions. Under such circumstances, the Court will exercise its pendent jurisdiction to dispose of these claims conclusively, since to allow them to survive for state court consideration

8. The alleged conspiracy was not really to fix prices, since there was no prescribed formula fixing the net price any given purchaser would have to pay for any given model of automobile. Rather, the allegation is that instead of discounting outright the suggested retail prices of their automobiles, the defendant dealers agreed to compete against each other only by offering concealed discounts in the form of inflated trade-in allowances for used cars, a stratagem supposedly designed to mislead customers into thinking that they were getting more valuable cars from the defendants—based on the lowest asking prices any of the defendants would offer exclusive of a trade-in allowance—than they would get for the same net prices from the plaintiff. While there is authority for the proposition that an agreement to maintain fixed "list" prices violates the Sherman Act

despite the fact that the conspirators are not bound to any fixed net price, see Plymouth Dealers' Ass'n of Northern California v. United States, 279 F.2d 128, 132–134 (9th Cir. 1960), it is clear that unfair competitive practices do not, at least in the absence of conspiracy, confer on a competitor a private cause of action under the antitrust laws, see Nashville Milk Company v. Carnation Co., 355 U.S. 373, 78 S.Ct. 352, 2 L.Ed.2d 340 (1958), and this Court remains dubious that what is basically an unfair business practice rather than a restraint of trade or competitive freedom can be transformed from a common law tort into a Sherman Act violation by virtue of the fact that joint tortfeasors rather than a single tortfeasor are at work. But this issue need not be developed since, in any event, there is no evidence of any conspiracy at all in this case.

would serve neither federalism nor judicial economy nor the interests of justice.

If the assertions of a conspiracy to harass the plaintiff in the conduct of its business had the evidentiary support sufficient to raise issues of material fact, several interesting questions of law might need to be considered. However, like the more specific allegations of conspiracy regarding the "fixing" of suggested retail prices by the defendant automobile dealers, these assertions are unsupported by anything other than glib and conclusory allegations. As plaintiff's counsel has himself admitted in the responsible discharge of his professional obligations to both Court and client, the plaintiff's allegations against the remaining defendants are insufficient to raise genuine issues for trial in the face of the specific denials in sworn depositions and affidavits by and in behalf of the several defendants that they never engaged in any such conduct. See Rule 56(e), *supra* note 7.

Accordingly, judgment should enter on behalf of all defendants dismissing the complaint of the plaintiff(s) and it is

So ordered.