Morton **HORVITZ**, as Executor of the Estate of Florence Horvitz, Plaintiff,

v.

Howard **OCONEFSKY**, Defendant.

No. 87 Civ. 6560 (RJW).

United States District Court,
S.D. New York.

April 13, 1988.

**960**

Kevin Concagh, P.C., New York City (Kevin Concagh, Steven Loren, of counsel), for plaintiff.

Waxman, Miller & Trautwig, P.C., Great Neck (Bonnie Lener Gorham, Steven Miller, of counsel), for defendant.

## OPINION

ROBERT J. WARD, District Judge.

Defendant Howard Oconefsky, a citizen of New York, moves to dismiss this wrongful death action pursuant to Rule 12(b)(3), Fed.R.Civ.P., for lack of genuine diversity of citizenship, and pursuant to Rule 12(b)(3), Fed.R.Civ.P., for improper venue. For the reasons that follow, defendant's motion to dismiss for lack of subject matter jurisdiction is granted. The motion to dismiss for improper venue is denied as moot.

## BACKGROUND

This wrongful death action arose out of a car accident which occurred in Searingtown, Nassau County, New York on July 7, 1987. Florence Horvitz, a passenger in the car driven by her husband, David Horvitz, was killed in a collision with a car driven by defendant Howard Oconefsky.

Florence and David Horvitz owned and lived in a home in Merrick, Nassau County, New York for over twenty-five years. Both were teachers in the New York City public school system. They had four children, three of whom are New York residents. In Florence Horvitz's 1973 will, she named her husband, David Horvitz, as executor and sole beneficiary of her estate. She named Morton Horvitz, David's brother and a citizen of Maryland, as successor executor. Florence Horvitz's estate consists of a pension account with the New York City Teachers' Retirement Fund, real estate jointly held with David Horvitz, several local bank accounts, some of which were held jointly with David Horvitz, and life insurance benefits.

On July 23, 1987, David Horvitz renounced his appointment as executor of his wife's estate. On August 10, Morton Horvitz, as successor executor, offered the decedent's will for probate in the Surrogate's Court, Nassau County. He filed the instant action on September 10, six days after the will was admitted to probate. In both cases—the probate of the will and the wrongful death action—plaintiff has been represented by the attorney referred to him by his brother, David.

Prior to plaintiff's filing of this motion, David Horvitz was deposed by the Court on January 2, 1988. When questioned about his motivation for declining to serve as executor of his wife's estate, the sole reason he gave was the emotional devastation he suffered as a result of her death. Deposition of David Horvitz at 29, 32 (taken on Jan. 2, 1988) ("Dep."). His decision to renounce his appointment was made after consultation with family members, including conversations with his son, Eric, who had by that time contacted several attorneys in contemplation of this litigation, including the attorney now representing plaintiff.[1] Dep. at 27–28.

Defendant claims that David Horvitz renounced the executorship so that his brother could succeed him in the position in order to file this wrongful death action, thereby manufacturing diversity in contravention of 28 U.S.C. § 1359.[2]

---

[1.] Because the statements in his deposition are contradictory, it is unclear whether David Horvitz had spoken to the attorney litigating this action prior to renouncing the executorship. When questioned by defendant's attorney, David Horvitz admitted that he had contacted attorney Kevin Concagh prior to declining to serve as executor. Dep. at 19. However, when questioned by the Court, David Horvitz stated that he consulted with Mr. Concagh only after he made the decision to renounce. Dep. at 27.

[2.] Title 28 § 1359 provides:

A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collu-

## DISCUSSION

For purposes of diversity jurisdiction, the citizenship of the representative of the estate, not of the beneficiary, is controlling. *Mecom v. Fitzsimmons Drilling Co.,* 284 U.S. 183, 52 S.Ct. 84, 76 L.Ed. 233 (1931); *see* C. Wright, A. Miller & F. Cooper, 13B Federal Practice and Procedure § 3606, at 420 (2d ed. 1984). However, the appointment of an out-of-state representative for the sole purpose of invoking the district court's jurisdiction violates 28 U.S.C. § 1359. *O'Brien v. Avco Corp.,* 425 F.2d 1030, 1036 (2d Cir.1969).[3] In such a case, federal jurisdiction is "improperly or collusively made," and thus the citizenship of the representative may not be relied upon to establish diversity.

The historic purpose of diversity jurisdiction was to provide an impartial forum for out-of-state parties who might be subject to prejudice in state courts. *Id.* at 1033. The practice of appointing out-of-state representatives may serve as a means of forum-shopping, thereby expanding diversity jurisdiction beyond its purpose. Section 1359 represents a Congressional policy to limit diversity jurisdiction to those cases in which it is justified. *Id.* at 1035; *see Kramer v. Caribbean Mills, Inc.,* 394 U.S. 823, 829, 89 S.Ct. 1487, 1490–91, 23 L.Ed.2d 9 (1969).[4] The circumscribed quality of federal jurisdiction mandated by the Constitution, C. Wright, A. Miller & F. Cooper, *supra,* § 3602, at 376, and the plain language of Section 1359 militate against taking jurisdiction where a wholly local controversy is litigated by a nominal or formal out-of-state party who has no significant stake in the outcome of the litigation. Thus, Section 1359 bars the district court

from acquiring subject matter jurisdiction where there is the appearance, but not the substance, of diversity. *Kramer v. Caribbean Mills, Inc., supra,* 394 U.S. at 828–29, 89 S.Ct. at 1490–91.

The Circuit Courts have used different tests to determine whether the appointment of an out-of-state fiduciary violates Section 1359. Under the "motive/function" test, the court determines, as a factual matter, whether the motivation behind the appointment of the out-of-state representative was to create diversity jurisdiction. *Gross v. Hougland,* 712 F.2d 1034, 1038 (6th Cir.1983), *cert. denied,* 465 U.S. 1025, 104 S.Ct. 1281, 79 L.Ed.2d 684 (1984); *Bass v. Texas Power & Light,* 432 F.2d 763, 765–67 (5th Cir.1970), *cert. denied,* 401 U.S. 975, 91 S.Ct. 1194, 28 L.Ed.2d 324 (1971); *O'Brien v. Avco Corp., supra,* 425 F.2d at 1034–35. *See* Mullenix, Creative Manipulation of Federal Jurisdiction: Is There Diversity After Death?, 70 Cornell Law Review 1011, 1032–34 (1985). Under the "substantial stake" test, the court determines whether the out-of-state fiduciary has a substantial stake in the litigation, rather than one that is merely procedural. *Sadler v. New Hanover Memorial Hosp.,* 588 F.2d 914, 916 (4th Cir.1978); *Bishop v. Hendricks,* 495 F.2d 289, 293–95 (4th Cir.), *cert. denied,* 419 U.S. 1056, 95 S.Ct. 639, 42 L.Ed.2d 653 (1974). *See* Mullenix, *supra,* at 1034–37. Both tests are subjective and require the district court to resolve the Section 1359 question based upon a factual inquiry.

While the Second Circuit approved of the inquiry into motive in the application of Section 1359 in *O'Brien v. Avco Corp., supra,* 425 F.2d at 1030, it is unclear

sively made or joined to invoke the jurisdiction of such court.

**3.** It is significant to note that the statute was previously interpreted to permit the practice of appointing an out-of-state administrator to obtain federal jurisdiction. *Lang v. Elm City Construction Co.,* 324 F.2d 235 (2d Cir.1963) (overruled by *O'Brien v. Avco,* 425 F.2d 1030 (2d Cir.1969)); *Corabi v. Auto Racing, Inc.,* 264 F.2d 784 (3rd Cir.1959) (en banc) (overruled by *McSparran v. Weist,* 402 F.2d 867 (3rd Cir.1968), *cert. denied,* 395 U.S. 903, 89 S.Ct. 1739, 23 L.Ed.2d 217 (1969)).

**4.** In *Kramer v. Caribbean Mills, Inc.,* 394 U.S. 823, 89 S.Ct. 1487, 23 L.Ed.2d 9 (1969), the only Supreme Court case interpreting Section 1359 since its revision in 1948, the Court held that the assignment of a contract claim to create diversity was improper and collusive, even though the assignment was valid under state law. In a footnote, the Court specifically declined to decide whether a motive to create diversity jurisdiction would render the appointment of an out-of-state administrator improper or collusive. *Id.* at 828 n. 9, 89 S.Ct. at 1490 n. 9.

whether this Circuit has fully embraced the "motive/function" test ascribed to it, to the exclusion of other criteria. *See Pallazola v. Rucker*, 797 F.2d 1116, 1121 (1st Cir. 1986); Mullinex, *supra*, at 1032 n. 117. In *O'Brien*, the renouncing executrix conceded that she resigned her appointment in order to select a' diverse administrator to prosecute a wrongful death action in federal court. Thus, in finding a violation of Section 1359, the court ruled as a matter of law that the motive of the executrix was improper. Because it was unnecessary for the court to investigate the out-of-state fiduciary's subjective motive, *O'Brien* provides no guidance as to what factors the court should consider in accepting or rejecting a party's motive as pure or impure.[5] After *O'Brien*, it would be nonsensical for an out-of-state fiduciary to concede that his appointment was motivated by a desire to litigate in federal court; therefore, when the issue of collusive jurisdiction arises, the district court must penetrate the party's professed motives to determine their legitimacy,[6] a problem the *O'Brien* court did not encounter. *See Groh v. Brooks*, 421 F.2d 589, 593–94 (3rd Cir.1970).

In *Trager v. New Rochelle Hosp. Medical Center*, 453 F.Supp. 516 (S.D.N.Y.1978), another wrongful death action, the court considered the subjective motive of the renouncing executor in light of all the surrounding circumstances:

> Whether the emotionally distraught condition of a named representative justifies his renunciation in favor of an out-of-state appointee and serves to rebut the presumption against diversity and to establish the good faith of the appointment must be considered in light of all the circumstances of the case and of the duties of the administrator under those circumstances.

*Id.* at 519.

In *Trager*, the husband of the decedent renounced his executorship in favor of the decedent's non-resident brother. The court found that the named executor's subjective motive for renouncing his appointment— emotional upset over his wife's death—was insufficient to rebut the presumption against diversity jurisdiction or to establish that the choice of the non-resident brother as administrator c.t.a. was not made for the purpose of manufacturing diversity. *Id.* at 520.

The *Trager* court did not specify which test—"motive/function" or "substantial stake"—it used to arrive at its result. In fact, the court endorsed the inquiry into motive, *id.* at 519, in reliance on *O'Brien v. Avco Corp., supra*, 425 F.2d at 1034, at the same time as it rejected the appointment of the decedent's brother for its nominal character, 453 F.Supp. at 520, in reliance on *Bishop v. Hendricks, supra*, 495 F.2d at 293–96, a case which propounded the "substantial stake" test. *See* Mullinex, *supra*, at 1035. Essentially, the *Trager* court used a hybrid approach, one that this Court finds to be a logical outgrowth of *O'Brien*. By inquiring into the out-of-state fiduciary's stake in the outcome of the litigation, the Court has one more tool to examine the motive behind his appointment. If the out-of-state fiduciary has a substantial stake in

**5.** The Circuit Courts have differed with respect to the type of motive that will withstand judicial scrutiny, as well as with respect to when such scrutiny is triggered. *Compare Bishop v. Hendricks*, 495 F.2d 289, 293–96 (4th Cir.), *cert. denied*, 419 U.S. 1056, 95 S.Ct. 639, 42 L.Ed.2d 653 (1974) ("motive for the appointment ... must be more than an expression of sentiment or personal preference or mere kinship with the beneficiaries or the decedent"; it must "harmonize with the thrust and purposes of Section 1359 itself") *with Bianca v. Parke–Davis Pharmaceutical Div. of Warner–Lambert Co.*, 723 F.2d 392, 399 (5th Cir.1984) (the court's "ultimate inquiry is into motive and purpose with substantiality of stake a relevant but not controlling indicator") *with Martinez v. United*

*States Olympic Committee*, 802 F.2d 1275, 1279 (10th Cir.1986) ("inquiry into the motive for the appointment [is necessary] in cases in which the appointee does not have a personal stake in the litigation").

**6.** In *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936), the Court noted that "[t]he District Court is vested with authority to inquire at any time whether [the] conditions [of diversity jurisdiction] have been met," through an examination of the facts supporting the allegation of jurisdiction. Under Rule 52(a), Fed.R.Civ.P., the district court's findings of fact are subject to review on a clearly erroneous standard.

the litigation, his appointment is less likely to be motivated by procedural advantage than if his functions are nominal or limited to the prosecution of a lawsuit.[7]

By the same token, the Section 1359 inquiry is aided by the consideration of a number of other factors, including the identity of the representative and his relationship to the party represented, the substantive function of the fiduciary, his stake in the outcome of the litigation, whether there is a non-diverse party who might normally be expected to represent the interest, where the beneficiaries reside, and whether the suit is wholly local in nature. *Groh v. Brooks, supra,* 421 F.2d at 595. Thus, the Court believes that an examination of the totality of circumstances in the case is the best method of determining whether the appointment of an out-of-state fiduciary was motivated by a collusive or improper purpose, as mandated by *O'Brien.*[8]

As noted in *Trager v. New Rochelle Hosp. Medical Center, supra,* 453 F.Supp. at 519, because there is a presumption against diversity jurisdiction, when defendant raises the issue of improper or collusive jurisdiction, the burden rests on plaintiff to prove that the district court's jurisdiction was properly invoked. *See McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 188–89, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936); *Bishop v. Hendricks, supra,* 495 F.2d at 293; *McSparran v. Weist,* 402 F.2d 867, 875 (3rd Cir.1968), *cert. denied,* 395 U.S. 903, 89 S.Ct. 1739, 23 L.Ed.2d 217 (1969).

In the instant case, David Horvitz's sole motive for renouncing the executorship of his wife's estate was the emotional distress he felt following her death. Dep. at 29, 32. While the Court has no doubt that David Horvitz was devastated by the death of his wife, it does not find credible his claim that this emotional distress made him unable to administer her simple estate, the majority of which he held jointly with her. Indeed, this wrongful death action presents far more stressful responsibilities for David Horvitz than the executorship he renounced, since he will have to relive the tragic event both to assist the attorney conducting the litigation and to testify as a witness if this case goes to trial.

As a beneficiary of this action, David Horvitz would normally be expected to represent his wife's interest in this litigation— plaintiff Morton Horvitz has no pecuniary stake in the outcome.[9] Further, Morton's substantive functions as executor are minimal. Outside of the wrongful death action, which will be handled by an attorney, the distribution of Florence Horvitz's estate is not cumbersome; it is modest in size and its sole beneficiary is David Horvitz. Indeed, David is the person best situated to discharge the limited duties connected with the estate. All of the couple's real estate was held jointly. Dep. at 12–14. As a New York City teacher himself, David Horvitz is likely to be familiar with the New

---

**7.** The drawback of using the "substantial stake" test without an inquiry into motive is that the test may grant diversity jurisdiction to a collusively appointed out-of-state fiduciary, as long as he has a pecuniary stake in the litigation. Section 1359, by its language, appears to mandate the motive inquiry. *Pallazola v. Rucker,* 797 F.2d 1116, 1125 (1st Cir.1986).

**8.** The Court points out that no matter which test it applies—"motive/function," "substantial stake," or a hybrid approach—the result in this case would be the same. First, the Court does not find that David Horvitz's emotional distress was a plausible motivation for renouncing his appointment. *See Trager v. New Rochelle Hosp. Medical Center,* 453 F.Supp. 516, 520 (S.D.N.Y. 1978). Further, it does not find plaintiff Morton Horvitz's duties, outside of the prosecution

of this wrongful death action, to be substantive. *See Bishop, supra,* 495 F.2d at 293–96. Finally, factoring all circumstances into the Section 1359 analysis, the Court's conclusions weigh heavily against plaintiff's litigating posture.

**9.** Under New York, the personal representative has the responsibility of distributing the proceeds of a wrongful death action to eligible distributees, N.Y. Est. Powers & Trusts Law §§ 4–1.1, 5–4.1, 5–4.4 (McKinney 1981 & Supp. 1988), based on proportionate pecuniary injuries after a hearing. *Id.* § 5–4.4. It is disingenuous to suggest that, in the instant case, this responsibility confers a substantial duty on plaintiff. David Horvitz would undoubtedly be the primary beneficiary of any recovery and would, in any event, have to participate in any court hearing.

York City Teachers' Retirement Fund in which Florence Horvitz had a pension account. Even after the commencement of this litigation, David Horvitz was still in possession of his wife's savings account passbooks. Dep. at 15. The Court finds that, even under great emotional stress, such an estate would not be burdensome to administer, particularly with the aid of an attorney and an accountant, both of which appear to be assisting the Horvitz family. Deposition of Morton Horvitz at 26 (taken on Dec. 28, 1987) ("Plaintiff's Dep."). In fact, prior to his renunciation, David Horvitz did perform two of the major duties associated with the administration of a relatively modest estate: he collected life insurance benefits on two policies, Dep. at 11, and took care of funeral expenses. Plaintiff's Dep. at 28.

There is no question that this action arises out of a controversy that was completely local in character: the car accident occurred in Nassau County; defendant lives in Nassau County; Florence Horvitz, on whose behalf this action is brought, was a long-time resident of Nassau County as is her husband, the named executor of the estate.[10]

While the Court accepts that plaintiff Morton Horvitz had a close family relationship with his brother and sister-in-law, "an expression of sentiment or personal preference or mere kinship with either the beneficiaries or decedent" is not enough to give "substantiality" to the representation. *Bishop v. Hendricks, supra,* 495 F.2d at 293. The strongest factor in plaintiff's favor is that he was named successor executor in the decedent's 1973 will. It was the intent of Florence Horvitz that her brother-in-law serve as executor in the event that her husband was unable to do so. Morton Horvitz's executorship was accepted by the Surrogate's Court as valid under state law. However, "the legality of a relationship for state law purposes does not control its effect on federal jurisdiction. That effect is determined by the policies behind the general grant of diversity jurisdiction, and its

limitation in section 1359." *O'Brien v. Avco Corp., supra,* 425 F.2d at 1034.

While the Court recognizes that "the appointment of an executor is less likely to be the product of collusion than is the appointment of an administrator," *Sadler v. New Hanover Memorial Hosp., supra,* 588 F.2d at 917, here the Section 1359 inquiry focuses not on the appointment of plaintiff, but on the motive of David Horvitz, the natural plaintiff, for renouncing the duties of executor, on the plausibility of his motive, and on the "substantiality" of Morton Horvitz's representation. In this case, it is the discretionary action on the part of the named executor, independent of the appointment of the successor executor, that opens the door to the possibility of "improper" or "collusive" jurisdiction.

Given the Court's skepticism of the renouncing executor's motive, the local nature of the controversy, plaintiff's lack of pecuniary stake in the litigation, and his lack of substantive administrative duties, plaintiff has failed to rebut the presumption against diversity jurisdiction. *Trager v. New Rochelle Hosp. Medical Center, supra,* 453 F.Supp. at 520; *see also Bishop v. Hendricks, supra,* 495 F.2d at 293 & n. 18. The Court cannot base subject matter jurisdiction on the fortuitous circumstance that the decedent's successor executor resided out-of-state, when it appears that the named executor, who is the estate's sole beneficiary, was capable of performing his limited duties.

The Court acknowledges that the decision in this case is a close one. However, where the factors under consideration are in equipoise, plaintiff has not discharged his burden of persuasion. The Court is reluctant to expand diversity jurisdiction to provide a federal forum for litigants who properly belong in state court. The driving policy behind any question of diversity jurisdiction must be "one of jealous restriction, of avoiding offense to state sensitiveness, and of relieving the federal courts of

---

**10.** Even if the Court had jurisdiction, venue would be improper since neither plaintiff nor defendant resides in the Southern District of

New York; nor did the claim arise here. *See* 28 U.S.C. § 1391(a).

the overwhelming burden of 'business that intrinsically belongs to the state courts.' " *City of Indianapolis v. Chase National Bank,* 314 U.S. 63, 76, 62 S.Ct. 15, 20, 86 L.Ed. 47 (1941). Here, the controversy is purely local, and plaintiff will not be subject to prejudice in the state forum. Further, the denial of jurisdiction by this Court does not result in harm to plaintiff because the two-year statute of limitations on wrongful death actions, N.Y. Est. Powers & Trusts Law § 5–4.1(1) (McKinney 1981 & Supp.1988), allows plaintiff ample opportunity to bring this action in state court.

### CONCLUSION

The Court grants defendant's motion to dismiss the complaint for lack of subject matter jurisdiction. Defendant's motion to dismiss for improper venue is denied as moot.

It is so ordered.