481 F.2d 116
 5 ERC 1509, 3 Envtl. L. Rep. 20,579
 NATURAL RESOURCES DEFENSE COUNCIL, INC., a non-profit New
York Corporation, et al., Petitioners,
v.
UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, Respondent,
Public Service Company of New Mexico, Intervenor in No. 72-1458.
 Nos. 72-1458 to 72-1460.
 United States Court of Appeals,
Tenth Circuit.
 Argued March 27, 1973.
Decided June 18, 1973.
Rehearing Denied July 16, 1973.
 
 Richard E. Ayres, New York City, for petitioners.
 Edmund B. Clark, Washington, D. C. and G. William Frick, Kansas City, Mo. (Kent Frizzell, Asst. Atty. Gen., Lawrence E. Shearer, Robert L. Klarquist, Martin Green, and Thomas C. Lee, Attys., Dept. of Justice, on the briefs), for respondent.
 William K. Stratvert, Albuquerque, N. M. (Keleher & McLeod, William B. Keleher, Albuquerque, N. M., on the brief), for Public Service Co. of New Mexico, intervenor in No. 72-1458.
 Before BREITENSTEIN and DOYLE, Circuit Judges, and TALBOT SMITH,* District Judge.
 BREITENSTEIN, Circuit Judge.
 
 
 1
 Before us are three petitions to review actions of the Administrator of the Environmental Protection Agency approving under the Clean Air Act Amendments of 1970, 42 U.S.C. Sec. 1857c-5, certain portions of the Implementation Plans of three states. No. 72-1458 concerns New Mexico, No. 72-1459 Utah, and No. 72-1460 Colorado. We dismiss each petition for the reason that no petitioner has standing to seek judicial review.
 
 
 2
 Section 1857c-5 requires each state to adopt and submit to the Administrator a plan for the implementation, maintenance, and enforcement of the national primary and secondary ambient air quality standards in each air quality control region. The Administrator must approve or disapprove the state plans within four months of the date of submission. Each of the three states submitted plans and the Administrator approved parts of each and disapproved other parts. The petitions seek review of the approval of certain portions of the plan for each state.
 
 
 3
 Review of the Administrator's action is provided by 42 U.S.C. Sec. 1857h-5(b)(1) which says:
 
 
 4
 "A petition for review of the Administrator's action in approving or promulgating any implementation plan under section 1857c-5 * * * may be filed only in the United States Court of Appeals for the appropriate circuit. Any such petition shall be filed within 30 days from the date of such promulgation or approval, * * *."
 
 
 5
 Each petition was filed within the requisite time. The New Mexico petition is typical and reads:
 
 
 6
 "The Natural Resources Defense Council, Project on Clean Air; the New Mexico Citizens for Clean Air; Mr. Ellis Harrington; and Mrs. Laverne Harrington petition this court for review of the rules and regulations promulgated by respondent (37 Fed. Reg.10842 et seq., 40 CFR Part 52, Subchapter C) insofar as they approve the State implementation plan for the State of New Mexico."
 
 
 7
 Natural Resources Defense Council is a petitioner in each case. The Utah petition names as additional petitioners five individuals and two organizations. The Colorado petition names as additional petitioners two organizations. We note that the briefs in the Colorado case name an individual as a petitioner but the records in the office of the clerk of the court contain no petition for review in which that individual is named as a petitioner. As to each organization, no petition discloses the type or state of organization, its purposes, or its membership. There are no allegations that any of the named individuals are citizens, residents, voters, or taxpayers of any of the affected states. There is no allegation of harm to any individual, to any organization, or to any member of any organization. There is no allegation that any individual or organization is affected or aggrieved by the challenged administrative action. There is no assertion of any constitutional issue.
 
 
 8
 At the conclusion of the oral argument on the merits of each case, we expressed concern over the standing of petitioners to sue and directed the parties to file briefs on that and other questions. Those briefs have now been filed.
 
 
 9
 In their supplemental brief, petitioners say that they are submitting separately "a stipulation of facts agreed to by the Department of Justice" which will sustain their claim of "the requisite injury in fact" if the Administrator's actions are allowed to stand. The mentioned stipulation has not been filed. The government's supplemental brief says that "we are not disposed to argue with petitioners that the actual facts will disclose that some of their members or people on whose behalf they petition" have incurred or will incur the requisite injury. The government statement is conclusionary and gives us no facts upon which we can determine standing.
 
 
 10
 The position of the government is no more than a consent to suit. Existence of jurisdiction is of dominant concern to the courts, McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135, and cannot be conferred by consent, American Fire & Casualty Co. v. Flinn, 341 U.S. 6, 17-18, 71 S.Ct. 534, 95 L.Ed. 702. Whether standing be considered as a jurisdictional question going to the existence of a case or controvery and hence within the judicial power under Art. III, Sec. 2, United States Constitution, or a rule of self-restraint, Flast v. Cohen, 392 U.S. 83, 92 n. 6, 88 S.Ct. 1942, 20 L.Ed. 2d 947, the matter is for determination by the courts, not by the parties to the litigation.
 
 
 11
 Few areas of federal jurisprudence produce more confusion and perplexity than does the concept of "standing to sue." Flast v. Cohen, 392 U.S. 83, 99, 88 S.Ct. 1942, 1952, 20 L.Ed.2d 947, quotes Prof. Paul A. Freund as saying that standing is one of "the most amorphous [concepts] in the entire domain of public law." In Data Processing Service v. Camp, 397 U.S. 150, 151, 90 S.Ct. 827, 829, 25 L.Ed.2d 184, the Supreme Court commented that, "Generalizations about standing to sue are largely worthless as such." The subject has aroused much interest among the commentators. See e. g. Jaffe, Standing to Secure Judicial Review: Public Actions, 74 Harvard Law Rev. 1265; Jaffe, The Citizen as Litigant in Public Actions: The Non-Hohfeldian or Ideological Plaintiff, 116 U. of Pa. Law Review 1033; Raoul Berger, Standing to Sue in Public Actions: Is it a Constitutional Requirement?, 78 Yale Law Journal 816; and The Aftermath of the Clean Air Amendments of 1970: The Federal Courts and Air Pollution, 14 Boston College Ind. and Com. Law Rev. 724.
 
 
 12
 Before turning to the decisions, we note that in recent years the question of standing has arisen often in cases where jurisdiction was invoked under the Administrative Procedure Act, 5 U.S.C. Sec. 702, which permits judicial review of agency action by a person "adversely affected or aggrieved" by that action. We are concerned with Sec. 1857h-5(b)(1) which does not contain the quoted phrase.
 
 
 13
 In Frothingham v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078, the Supreme Court ruled that a federal taxpayer is without standing to challenge in federal court the constitutionality of a federal statute. In Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947, the Court upheld standing to challenge the expenditure of federal funds for the purchase of educational materials for religious and sectarian schools on the ground that the expenditures violated the Establishment and Free Exercise Clauses of the First Amendment. In so holding, the Court treated standing as an aspect of justiciability, 392 U.S. at 98, 88 S.Ct. 1942, and found no Art. III bar "to suit by taxpayers challenging allegedly unconstitutional federal taxing and spending programs." Ibid. at 101, 88 S.Ct. at 1953.
 
 
 14
 Data Processing Service v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184, was an APA case in which the Court upheld standing of a party who claimed economic injury by agency action. The Court said that standing in federal court is to be considered within the framework of Art. III. Ibid. at 151, 90 S.Ct. 827. Apart from the case or controversy test, consideration must be given to whether the interest sought to be protected "is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." Ibid. at 153, 90 S.Ct. at 830. The Court also recognized that problems of standing involve a "rule of self-restraint" which the Court applies for its own governance. Ibid. at 154, 90 S.Ct. 827.
 
 
 15
 Barlow v. Collins, 397 U.S. 159, 90 S. Ct. 832, 25 L.Ed.2d 192, also involved an attack on agency action with jurisdiction invoked under the APA. The Court held that the plaintiffs had a personal stake and interest which "impart the concrete adverseness required by Article III," that the plaintiffs were "within the zone of interests" protected by the statute involved, and that judicial review of the agency action was not precluded by the statute. Ibid. at 164-165, 90 S. Ct. at 836.
 
 
 16
 In Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636, the Supreme Court again dealt with an attack on agency action with jurisdiction invoked under the APA. The Court held that Sierra Club lacked standing to maintain the suit. In so doing it noted the trend to recognize injuries other than economic harm and said that such recognition does not abandon the requirement that a party "seeking review must himself have suffered an injury." Ibid. at 738, 92 S.Ct. at 1368. The Court said that "an organization whose members are injured may represent those members in a proceeding for judicial review," and commented that Sierra Club was a large and long-established organization "with a historic commitment to the cause of protecting our Nation's natural heritage from man's depredations." Ibid. at 739, 92 S.Ct. at 1368. The following excerpt summarizes the Court's decision, Ibid. at 740, 92 S.Ct. at 1368:
 
 
 17
 "The requirement that a party seeking review must allege facts showing that he is himself adversely affected does not insulate executive action from judicial review, nor does it prevent any public interests from being protected through the judicial process. It does serve as at least a rough attempt to put the decision as to whether review will be sought in the hands of those who have a direct stake in the outcome. That goal would be undermined were we to construe APA to authorize judicial review at the behest of organizations or individuals who seek to do no more than vindicate their own value preferences through the judicial process. The principle that the Sierra Club would have us establish in this case would do just that."
 
 
 18
 None of the mentioned decisions consider Sec. 1857h-5(b)(1) which says only that a petition for review may be filed in the court of appeals of the appropriate circuit. Nothing is said about who may file the petition, what the petition shall say, what constitutes the record, what is the scope of review, or what are the consequences to a losing petitioner. In contrast Sec. 1857h-2, which covers district court actions, provides that a civil action may be brought by any person in his own behalf but, with two specified exceptions, a 60-day notice must be given and the final order of the court "may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate." Thus, the provision for district court suits differs from the provision for circuit court review in that it requires notice and permits a possible penalty.
 
 
 19
 Our search for legislative history which might illuminate congressional intent with regard to circuit court review has proved fruitless. The reference thereto in Conf.Rep.No. 91-1783 is not helpful. See 3 Cong. and Admin.News '70, p. 5389. The Senate debate was concerned with the provisions for district court actions. See 116 Cong.Rec. 32922-32927. We must take Sec. 1857h-5(b)(1) as written.
 
 
 20
 Data Processing says that Congress can resolve the standing question "save as the requirements of Article III dictate otherwise." 397 U.S. at 154, 90 S. Ct. at 830. Barlow refers to the question of the intent of Congress to preclude or allow judicial review of administrative action. 397 U.S. at 165, 90 S. Ct. 832. Sierra Club says that where the issue is justiciable the question of proper party "is within the power of Congress to determine." 405 U.S. at 732, n. 3, 92 S.Ct. at 1365.
 
 
 21
 We believe that the question is whether the party attacking agency action has standing, not whether the issue itself is justiciable. In any event, it would seem that the Flast v. Cohen statement that standing "is an aspect of justiciability," 392 U.S. at 98, 88 S.Ct. 1942, would require the present question to be decided on a constitutional basis if it were not for the apparent recognition of nonconstitutional factors in Data Processing, Barlow, and Sierra Club.
 
 
 22
 Those factors are whether the attack on agency action is by a person within the zone of protected interests and whether Congress precludes or authorizes judicial review. Petitioners cannot take advantage of the first because they do not allege what their interests are and thus make impossible the determination of whether the interests lie in a protected zone.
 
 
 23
 We come then to the effect of Sec. 1857h-5(b)(1). By permitting anyone in the world to petition for review of agency action without hindrance or limitation, Congress attempts to authorize private attorney generals to assert a public interest. If Art. III is not controlling, the question is the power of Congress to affect the Court imposed rule of self-restraint. We are helped by no decided cases. The learned comments of the legal writers delve into history and theory but forego discussion of the practicalities. Anything which we might say on the rights of private citizens to assert their ideologies in public actions would add little if anything to the literature on the subject.
 
 
 24
 From a practical standpoint, it seems to us unreasonable to interpret Sec. 1857h-5(b)(1) as expressing a congressional intent to permit a New York subway rider to challenge in the Court of Appeals for the Tenth Circuit actions of the Administrator affecting the Four Corners area of New Mexico, Utah, and Colorado. If such be the intent of Congress, let it say so explicitly. It did not. We have a blanket authorization, nothing more. Nothing requires that "the questions will be framed with the necessary specificity, that the issues will be contested with the necessary adverseness and that the litigation will be pursued with the necessary vigor to assure that the * * * challenge will be made in a form thought to be capable of judicial resolution." 392 U.S. at 106, 88 S.Ct. at 1956. We believe that any congressional authorization of suits by private attorney generals must be unequivocal and appropriate. We further believe that under the doctrine of separation of powers the question of the validity and extent congressional authorization is for determination by the judicial branch. Otherwise the provisions of Art. III limiting judicial power to cases and controversies is thrown into the discard.
 
 
 25
 In our opinion Sec. 1857h-5(b)(1) is not an appropriate authorization for private attorney generals to petition in the courts of appeals for review of the actions of the Administrator and is not sufficient to accomplish that purpose. Unrestricted litigation by private persons to assert their own ideologies under a claim of public interest presents the potential of hazardous consequences to our constitutional system based as it is on the concept of separation of powers. The statute before us is a blanket invitation to all the world to petition a court of appeals for review of administrative action. The latent effects have alarming possibilities. We are not convinced that Art. III is inapplicable but, even if it is, Sec. 1857h-5(b)(1) does not require a court of appeals to abdicate the power of judicial restraint in cases such as those before us.
 
 
 26
 Petitioners seek to bolster their position by reference to Rule 15(a), F.R.A. P., providing for review of agency orders. They say that they have complied with the requirement that:
 
 
 27
 "The petition shall specify the parties seeking review and shall designate the respondent and the order or part thereof to be reviewed. Form 3 in the Appendix of Forms is a suggested form of a petition for review."
 
 
 28
 Adherence to Form 3 does not solve the question of standing. The statutory authority of the Supreme Court to prescribe rules, including appellate rules, provides, 28 U.S.C. Sec. 2072, that such rules "shall not abridge, enlarge, or modify any substantive right."
 
 
 29
 Petitioners point out that these cases are concerned with agency rule making and not action taken after an adjudicatory type hearing. The difference is unimportant. A party attacking agency action, whether it be in connection with rule making or after an adjudicatory type hearing, must have standing. The fact that determination of standing may involve a court of appeals in a factual hearing or determination is irrelevant.
 
 
 30
 Our April 27, 1973 decision in No. 72-1575-Utah International, Inc. v. Environmental Protection Agency, 478 F.2d 126, has no pertinence here. In that case we held that Sec. 1857h-5(b)(1) does not permit review in the court of appeals of an Administrator's order disapproving portions of a state Implementation Plan. Here we are concerned with approval rather than disapproval. Utah International does not discuss standing.
 
 
 31
 We believe that Art. III is controlling and that petitioners lack standing because they fail to state any injury in fact and hence do not present a case or controversy within the constitutional mandate. If we are wrong in this, we believe that petitioners have no standing because they have alleged nothing which brings them within the zone of interests protected by the Clean Air Act Amendments of 1970. If we are wrong in both of these conclusions and if the later decisions in Data Processing, Barlow, and Sierra Club do away with the Flast v. Cohen disposition of standing on constitutional grounds, we believe that Sec. 1857h-5(b)(1) is ineffective to deny the exercise of judicial restraint in determination of standing in cases like these, and we choose to exercise that restraint.
 
 
 32
 In Nos. 72-1458, 72-1459, and 72-1460 the petitions for review are severally dismissed.
 
 
 
 *
 Of the Eastern District of Michigan, sitting by designation