Stacey WILLIAMSON

v.

CHRYSLER CORPORATION.

Civil Action No. 96–5021.

United States District Court,
E.D. Pennsylvania.

May 6, 1997.

Craig Thor Kimmel, Blue Bell, PA, for Plaintiff.

James W. Stevens, Marshall, Dennehey, Warner, Coleman and Goggin, Philadelphia, PA, for Defendant.

*MEMORANDUM*

DALZELL, District Judge.

We are here presented with the question whether we have diversity jurisdiction over the subject matter of plaintiff's lemon law action.

The plaintiff, Stacey Williamson, filed this lemon law case on July 15, 1996, alleging that the damages to which she is entitled in this diversity case exceeded the then-jurisdictional minimum of $50,000.01.[1]  Specifically, Wil-

---

1.  As we noted in *Hilferty v. Chevrolet Motor Div.,* No. 95–5324, 1996 WL 287276, at *1 n. 1 (E.D.Pa. May 30, 1996), "Kimmel & Silverman, P.C. alleges in every lemon law complaint that

liamson contends that her breach of warranty claim equals $24,029.80, which, Williamson argues, could be trebled under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa.Stat. § 201-1, *et seq.*, thus exceeding the applicable jurisdictional minimum. *See* Pl.'s Mem. of Law at 5.

We ordered the parties to file memoranda of law on the issue of our jurisdiction over the subject matter of this case, and we held a hearing today on the issue.

■ While the jurisdictional amount plaintiff alleges controls unless the defendant shows "to a legal certainty" that the claim is inadequate, *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938), we are not bound by the complaint's conclusory allegations, but may look through them to see if plaintiff has supported "them by competent proof ... by a preponderance of evidence." *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936).

A brief recitation of the undisputed material facts of this case will serve to explain our disposition of the jurisdictional issue. On April 8, 1995, Williamson purchased a 1995 Dodge Neon for $17,205.81. Of the purchase price, she paid $3,100 as an out-of-pocket downpayment, and financed the $14,105.81 balance. A few months after purchasing the Neon, Williamson on November 18, 1997 had the car repaired for the first of what would be five times. Williamson claims that she has to date incurred a total of $8,061.00 in finance charges. *See* Pl.'s Mem. of Law at 5.

■ The amount in controversy here may be calculated under the approach we took in *Shimsky v. Ford Motor Co.*, 170 F.R.D. 125 (E.D.Pa.1997). Because the value of Williamson's car is readily ascertainable—$8,900 [2]—and since, under the lemon law, Williamson would have had to surrender the car in order to get the purchase price back,[3] it is proper to deduct the market value of the car in order to ascertain the amount in controversy in this case. *See Shimsky*, 170 F.R.D. at 126-27; *see also Horton v. Ford Motor Co.*, No. 96-4643 (E.D.Pa. Feb. 25, 1997) (Order); *accord Hilferty v. Chevrolet Motor Div.*, No. 96-1540, slip op. at 13, 116 F.3d 468 (3d Cir. May 5, 1997) (endorsing "net economic gain" approach of reducing the amount plaintiffs may recover by the "fair market, retail value of the vehicle turned in by the" plaintiffs),[4] *aff'g, Hilferty v. Chevrolet Motor Div.*, No. 95-5324, 1996 WL 287276, at

---

there is more than $50,000 in controversy, but we question how often, in fact, that is true." Our Court of Appeals shares our concern: "[T]here is serious reason to question whether Mr. Silverman violated the constraints of Rule 11 of the Federal Rules of Civil Procedure by asserting that the amount in controversy in this case exceeded $50,000." *Hilferty v. Chevrolet Motor Div.*, No. 96-1540, slip op. at 25 n. 9 (3d Cir. May 5, 1997), *aff'g, Hilferty v. Chevrolet Motor Div.*, No. 95-5324, 1996 WL 287276 (E.D.Pa. May 30, 1996).

2. The *wholesale* value of a similarly equipped 1995 Dodge Neon to the trade, according to the National Auto Research Black Book, was between $9,450.00 and $10,450.00, in July of 1996. *See* Affidavit of Matthew Zielke, Chrysler Arbitration Manager, at ¶ 24, and his testimony. The Automobile Red Book lists the wholesale value of Ms. Williamson's car at $10,500 as of June 30, 1996. *See id.* Nonetheless, we use an even lower value because of the need to remove an after-market alarm system from the car at issue, and replace its electrical body harness. *See id.* at ¶ 25.

Our Court of Appeals in *Hilferty v. Chevrolet Motor Div.*, No. 96-1540, slip op. at 15 (3d Cir.

May 5, 1997) yesterday endorsed the approach we took in *Hilferty v. Chevrolet Motor Div.*, No. 95-5324, 1996 WL 287276 (E.D.Pa. May 30, 1996), which we use here, of looking to the affidavit of a qualified individual who can credibly testify as to the present value of the car plaintiff must return to the defendant in order to recover anything in a lemon law case. Judge Nygaard, writing for a unanimous panel, in *Hilferty* held that the use of an affidavit from GM's "customer assistance managers that the average retail value in the greater Philadelphia area of a 1995 Chevrolet Lumina, with the same features and mileage as the Hilfertys' car, is $16,350," slip op. at 15, was entirely proper and characterized Kimmel & Silverman's argument that "it was impossible to arrive at a fair market retail value of the car" as "sophistical," *id.* at 17.

3. "[T]he manufacturer shall ... accept return of the vehicle from the purchaser and refund to the purchaser the full purchase price, including all collateral charges, less a reasonable allowance for the purchaser's use of the vehicle," 73 Pa. Stat. § 1955.

4. *See generally id.* at 13–17 & n. 5.

*6 (E.D.Pa. May 30, 1996) ("Where the damages are based on loss to tangible property with a readily-ascertainable market value, then we may calculate with a high level of confidence what the real world damages were."); *Suber v. Chrysler Corp.*, 104 F.3d 578, 585 n. 7 (3d Cir.1997) (holding that because "plaintiff must return the vehicle to the manufacturer in order to receive payment of any damages awarded," the district court, on remand, must determine "whether the amount in controversy should, accordingly, be reduced to account for the value of the vehicle when it is returned").

▇▇▇ The base figure for this calculation is $6,967.01,[5] and were we to treble this amount, we would still have a base of only $20,901.03 against which to add a reasonable attorney's fees. Legal fees in this case would never exceed $29,098.98.[6]

5. $17,205.81 (the purchase price) minus $8,900.00 (the value of the car) minus $1,338.00 (use of car prior to first repair—10,338 miles at 10¢ per mile, *see* 73 Pa.Stat. § 1955; Pl.'s Mem. of Law at 5). As we noted in *Hilferty v. Chevrolet Motor Div.*, No. 95–5324, 1996 WL 287276, at *2 (E.D.Pa. May 30, 1996), *aff'd*, No. 96–1540 (3d Cir. May 5, 1997), the value of the car, "for scrap metal if nothing else," must be deducted from the amount plaintiff may recover.

6. To rehearse our holding in *Hilferty v. Chevrolet Motor Div.*, No. 95–5324, 1996 WL 287276, at *6 (E.D.Pa. May 30, 1996), *aff'd*, No. 96–1540, slip op. (3d Cir. May 5, 1997): We do not believe any reasonable person would ever spend more than $20,901.03 in legal fees to recover $20,901.03 and vindicate no other interest. We are certain no reasonable person would pay $29,098.98 in fees to win $20,901.03. *See Hilferty*, No. 96–1540, slip op. at 9 (3d Cir. May 5, 1997) ("Based on its valuation of the net economic gain of the litigation as $4,070.80, the district court concluded that no reasonable person would have spent almost $13,000 to vindicate a purely economic loss of that amount. We agree. There must be some rational relationship between the amount of an economic loss and the expenditures exhausted trying to recoup that loss. Indeed, where a plaintiff achieves only limited success, a district court should award only that amount reasonable in relation to the results obtained.") (internal quotation marks and citation omitted).

Furthermore, our Court of Appeals has cast grave doubt on the veracity of Kimmel & Silverman's billing practices. *Hilferty*, No. 96–1540, slip op. at 21 (3d Cir. May 5, 1997) ("Indeed, we commend the patient effort of the district court

The record is unambiguous that the amount in controversy in this matter cannot approach the jurisdictional minimum.[7] We thus find to a legal certainty that the amount in controversy, even with trebling and reasonable attorney's fees, could not here reach $50,000.01. Accordingly, we find that we lack jurisdiction over the subject matter of this case.

An appropriate Order follows.

### ORDER

AND NOW, this 6th day of May, 1997, after a hearing in open Court this afternoon, and upon consideration of plaintiff's memorandum of law and affidavit in support of diversity jurisdiction, defendant's response thereto and accompanying affidavit, and in accordance with the accompanying Memorandum, it is hereby ORDERED that:

to arrive at a reasonable award of attorneys' fees notwithstanding the total lack of a real billing system and adequate record-keeping procedures demonstrated by [Kimmel] & Silverman."); *see also id.* at 24 ("Moreover, we also note that there is additional evidence in the record that raises serious questions about plaintiffs' counsel's veracity and conduct throughout the course of this case."); *id.* at 25 n. 9 ("[W]e conclude that the district court was more than justified in placing little confidence in the veracity of plaintiffs' counsel."). *See supra* n. 1 (Rule 11 sanctions).

7. Alternatively, if we cut through plaintiff's approach to view the economic reality of the transaction here, the record is undisputed that Williamson's total out-of-pocket expenditure for the car is at most $11,161.04—$3,100.00 (down payment) plus $8,061.04 (accrued finance and principal charges). We note that the amount of finance charges has, since the date of the arbitration award (February 11), been entirely in plaintiff's control: surrender of the car would immediately cut off further accrual of such charges. But even if we were to treble the unadjusted out-of-pocket figures, we would have a theoretical base of only $33,483.12 against which to add a reasonable attorney's fees. Reasonable attorney's fees could not possibly reach $16,516.89 where it exceeds the base loss by 48%; no rational economic actor would undertake such a foolish transaction. *See supra* n. 6; *see also Neff v. General Motors Corp.*, 163 F.R.D. 478 (E.D.Pa. 1995). It is therefore clear that the amount in controversy in this case does not approach the jurisdictional minimum even under this far more generous (and economically unlikely) method of calculation.

1. This case is DISMISSED for lack of subject matter jurisdiction; and

2. The Clerk shall CLOSE this case statistically.