DANKA DE PUERTO RICO,
INC., Plaintiff,

v.

The UNITED STATES, Defendant.

No. 04–367C.

United States Court of Federal Claims.

Nov. 19, 2004.

Gabriel I. Peñagarícano, San Juan, P.R., for plaintiff.

James D. Colt, Trial Attorney, Kathryn A. Bleecker, Assistant Director, David M. Cohen, Director, Commercial Litigation Branch, Civil Division, Peter D. Keisler, Assistant Attorney General, United States Department of Justice, Washington, D.C., for defendant.

## OPINION AND ORDER

GEORGE W. MILLER, Judge.

Plaintiff, Danka de Puerto Rico, Inc. ("Danka"), filed a complaint against the Commonwealth of Puerto Rico, ex rel. Puerto Rico National Guard, in the Commonwealth of Puerto Rico, Court of First Instance, Superior Court of San Juan on December 27, 2002. On July 10, 2003, plaintiff filed an Amended Complaint to include the United States Property and Fiscal Office ("USPFO"), an agency of the United States that acted as the purchasing agent for the Puerto Rico National Guard, as a co-defendant. USPFO removed the action to the United States District Court for the District of Puerto Rico on August 12, 2003. On November 7, 2003, USPFO filed a motion to dismiss for lack of personal and subject matter jurisdiction. Plaintiff filed its response on November 20, 2003. On December 16, 2003, USPFO filed its reply. On December 19, 2003, the district court granted USPFO's motion to dismiss and ordered that the claims against USPFO be transferred to the Court of Federal Claims pursuant to 28 U.S.C. § 1631

(2000). The district court determined that the claims against USPFO should be transferred to this court because the contract at issue involved federal appropriations made available for expenses of the Puerto Rico National Guard, and payment of a judgment in plaintiff's favor would necessarily be made from federal funds, rather than from funds of the Commonwealth of Puerto Rico. The district court adopted the contention of USPFO that because the demand in the complaint exceeded the sum of $10,000, exclusive jurisdiction was in the U.S. Court of Federal Claims.

The Puerto Rico district court filed a copy of the record with this court on March 9, 2004.[1] Danka filed an amended complaint[2] in this court on March 17, 2004, alleging that the USPFO prematurely terminated a contract for the supply and servicing of copy machines, making the defendant liable for termination penalties. On June 24, 2004, defendant filed a Motion to Dismiss, arguing that the Court of Federal Claims does not have subject matter jurisdiction over the action because plaintiff never made a formal claim to the contracting officer demanding a sum certain. Plaintiff filed its Opposition to the United States Motion to Dismiss on August 16, 2004. On September 8, 2004, defendant filed its Reply Brief in Support of its Motion to Dismiss. Oral argument was deemed unnecessary. For the reasons set forth below, the Court GRANTS defendant's motion to dismiss.

## BACKGROUND FACTS

The following facts are undisputed, unless otherwise noted. Danka is a corporation chartered in Puerto Rico. Since 1986, USPFO has contracted with Kodak Caribbean, Inc., and its successor, Danka, for the supply and servicing of copy machines. In 1996, a new contract was negotiated for a five-year period, which was eventually transferred to

---

1. Rule of the Court of Federal Claims ("RCFC") 3.1(a)(1) states that "[w]hen the transfer of a case from another court to this court is permitted by law ... the case shall be filed in this court upon the receipt by the clerk of a certified copy of the record made in the other court, including the order of that court granting the transfer."

2. RCFC 3.1(a)(2) states "... copies of the complaint filed in the other court ... shall be filed with the clerk within 28 days after the filing required in subdivision (a)(1). In lieu thereof and within the same time period, an original and 7 copies of an amended complaint may be filed in conformity with the rules of this court setting forth the claim or claims transferred."

Danka. This contract expired in October 2001 and thereafter continued month-to-month. In 2000, Sergeant Major Isolina Negrón, an employee of the Department of Information Management of USPFO, approached one of Danka's sales executives, Jorge Rivera, requesting that certain existing units be replaced with Toshiba brand copiers. Danka contends that the models were offered under the Lease to Ownership Plan ("LTOP"), which was the only plan, other than an outright purchase, available for the acquisition of the units required by defendant. Defendant alleges that the purchase request form initially specified that the copiers would be included in the "Cost per copy contract," but Danka's representative persuaded Ms. Negrón to include the words "to include in LTOP contract" even though the 1996 contract had not been under a LTOP.

On February 28, 2002, USPFO informed Danka that it was terminating its month-to-month arrangement, retroactive to February 1, 2002, and asked Danka to remove the Toshiba copiers. Danka claimed that the LTOP language contained in the purchase orders submitted by USPFO, but not contained in the 1996 contract, made USPFO liable for termination penalties. USPFO disputed that LTOP provisions were applicable. Danka refused to retrieve the Toshiba machines until the USPFO agreed to pay penalties. Danka contends that at present there are eight photocopy machines in USPFO's possession that are subject to the premature termination charges.

On April 10, 2002 and May 2, 2002, the parties held meetings to discuss whether their agreement incorporated LTOP provisions. On August 9, 2002, the USPFO again requested that Danka remove the Toshiba copiers. In an August 28, 2002 meeting, the parties again tried to resolve their dispute as to whether their agreement was governed by the LTOP provisions. In letters dated September 3 and 16, 2002, the USPFO requested that Danka remove the Toshiba machines.

On October 24, 2002, Danka wrote to USPFO indicating that it would pursue legal action. On December 20, 2002, Danka wrote a letter to Sonia Franco, a contracting specialist at USPFO, itemizing $33,376.85 that it claimed USPFO owed for "rent and maintenance" and charges on other machines. None of Danka's letters mentioned the sum of $109,040.91 now sought by Danka in addition to the $33,376.85 requested in Danka's December 20, 2002 letter. Danka contends that this additional amount is comprised of the remaining payments on each of the units contracted under the LTOP plan to the end of the contractual term of 60 months, less certain unearned or non-accrued charges, plus late payment charges.

Danka's amended complaint in this court seeks a total of $142,417.76, which consists of $109,040.91 attributable to the remaining payments due under the LTOP plan as set forth above plus late payment charges, together with $33,376.85 attributable to the other charges itemized in Danka's letter of December 20, 2002.

## DISCUSSION

### I.  Standard for Motion to Dismiss

■■■ Defendant has moved to dismiss Danka's claim, alleging that Danka failed to take the steps necessary to establish jurisdiction in the Court of Federal Claims. Pursuant to RCFC 12(b)(1), the Court is required to grant defendant's motion to dismiss if it finds that the Court does not possess jurisdiction over the plaintiff's claim. Once jurisdiction is challenged, the plaintiff bears the burden of establishing jurisdiction. *Holland v. United States,* 57 Fed.Cl. 540, 550 (2003) (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)). When deciding a motion to dismiss, the court must assume that all undisputed facts alleged by the non-moving party are true and must draw all reasonable inferences in the non-movant's favor. *Mexican Intermodal Equipment, S.A. de C.V. v. United States,* 61 Fed.Cl. 55, 59 (2004) (citing *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). When the facts regarding jurisdiction are in dispute, the court may consider all relevant evidence in order to resolve factual disputes, including evidentiary matters outside the pleadings. *Wilson v. United States,* 58 Fed.

Cl. 760, 762 (2003) (citing *Indium Corp. of America v. Semi–Alloys, Inc.,* 781 F.2d 879, 884 (Fed.Cir.1985)).

## II. The Court Does Not Have Jurisdiction Over Danka's Demands for Payment

■ The United States Court of Federal Claims is a court of specific and limited jurisdiction. *United States v. King,* 395 U.S. 1, 3, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969); *American Maritime Trans., Inc. v. United States,* 870 F.2d 1559, 1563 (Fed.Cir.1989). The Tucker Act grants this court "jurisdiction to render judgment upon any claim against the United States founded upon ... any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2000). Furthermore, the court "shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 10(a)(1) of the Contract Disputes Act of 1978 ... on which a decision of the contracting officer has been issued under [41 U.S.C. § 605 (2000)]." 28 U.S.C. § 1491(a)(2).

The Contract Disputes Act ("CDA") sets forth the requirements for claims by a contractor. *See* 41 U.S.C. § 605. "All claims by a contractor against the government [must] be in writing and shall be submitted to the contracting officer for a decision." 41 U.S.C. § 605(a). Contractor claims in excess of $100,000 must be certified as to accuracy by a duly authorized representative of the contractor. 41 U.S.C. § 605(c)(1). The language in § 605(a) "has been construed to require a 'final decision' on a claim by the contracting officer as a 'jurisdictional prerequisite' to further legal action." *Ervin and Assocs., Inc. v. United States,* 44 Fed.Cl. 646, 653 (1999) (quoting *Sharman Co. v. United States,* 2 F.3d 1564, 1568 (Fed.Cir.1993), *overruled in part on other grounds by Reflectone, Inc. v. Dalton,* 60 F.3d 1572 (Fed.Cir.1995)); *see Paragon Energy Corp. v. United States,* 227 Ct.Cl. 176, 645 F.2d 966, 967 (1981); *see also Bath Iron Works Corp. v. United States,* 20 F.3d 1567, 1578–79 (Fed.Cir.1994).

The CDA does not define what constitutes a "claim." *Dawco Constr., Inc. v. United States,* 930 F.2d 872, 877 (Fed.Cir.1991), *overruled on other grounds by Reflectone,* 60 F.3d 1572. The Federal Acquisition Regulation ("FAR"), which governs the manner in which federal agencies conduct procurements, defines "claim" as:

> [1] a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract ... [2] A voucher, invoice, or other routine request for payment that is not in dispute when submitted is not a claim. [3] The submission may be converted to a claim, by written notice to the contracting officer as provided in 33.206(a), if it is disputed either as to liability or amount or is not acted upon in a reasonable time.

48 C.F.R. § 2.101. In order for the Court to find that Danka had in fact asserted a claim under the FAR, Danka would have to show that it sent to the cognizant contracting officer "a written demand or written assertion ... seeking, as a matter of right, the payment of money in a sum certain ...." *See id.*

### A. The Demand for $33,376.85

■ Danka wrote a letter on December 20, 2002 itemizing the $33,376.85 sought in its complaint. Def. Mot. Dismiss at 6. Danka claimed that it was owed that amount under the contract. Therefore, with respect to that amount, Danka did seek a sum certain as a matter of right. However, Danka sent the letter to Sonia Franco, who was not a contracting officer at the time. (Franco Decl. ¶ 3.)

Danka does not dispute that the letter's recipient, Ms. Franco, was not the contracting officer. The plain language of 41 U.S.C. § 605 requires that claims against the Government be submitted to the contracting officer. *See Neal & Co. v. United States,* 945 F.2d 385, 388 (Fed.Cir.1991). Danka argues, however, that sending the letter to Ms. Franco was an acceptable alternative to sending the letter to the contracting officer. Pl.'s Opp. Mot. Dismiss at 16 (citing *Neal & Co.,*

945 F.2d at 388–89.). However, unlike the *Neal & Co.* contractor that sent its claim to the primary contact for the contract, 945 F.2d at 388, Danka did not allege nor does the record reflect that Ms. Franco was the primary contact on the contract in question here. Moreover, the *Neal & Co.* contractor was able to show that the contracting officer had received the written demand in a timely manner. *Id.* at 388–89. In addition to not directly contacting the contracting officer, Danka did not allege that the contracting officer timely received its letter demanding $33,376.85. Accordingly, Danka has not met its burden to show that, with respect to this amount, it made a written demand that would constitute a claim within the meaning of the CDA. Thus, plaintiff has failed to invoke this Court's jurisdiction under 28 U.S.C. § 1491(a)(2).

## B. The Demand for $109,040.91

■ In order to invoke this Court's jurisdiction with respect to its claim for $109,040.91, Danka must establish that it has made "a written demand or written assertion . . . seeking, as a matter of right, the payment of money in a sum certain." 48 C.F.R. § 2.101. Such a demand must be made upon "the contracting officer" "in writing." 41 U.S.C. § 605(a). In addition, because the claim is for more than $100,000, Danka was required, through a duly authorized representative of the company, to certify the claim as to accuracy. 41 U.S.C. § 605(c)(1). Danka contends in its amended complaint that it is entitled to $109,040.91 by contractual right. However, the record reflects that Danka did not satisfy any of the prerequisites necessary to invoke this Court's jurisdiction in respect of this claim.

The complaint asserts that Danka derived the amount of $109,040.91 by calculating "the remaining payments of each of the units contracted under the LTOP plan to the end of the contractual term of 60 months, less the non accrued charges, plus late payment charges." Am. Compl. at 3, n. 6. Danka has not alleged that it made, and the Government does not have any record of, a written demand for the $109,040.91 now sought. In addition, Danka did not certify that the claim

had been made in good faith, that the supporting data was accurate and complete to the best of the company's knowledge and belief; nor that the amount accurately reflected the contract adjustment for which Danka believed the Government liable. 41 U.S.C. § 605(c)(1). Thus, Danka has failed to invoke jurisdiction in this Court with respect to this claim.

■ Danka argues that the demand for $109,040.91 "was a settlement proposal for the early termination of the LTOP lease," rendering it a non-routine request for compensation, and therefore, there did not have to be a pre-existing dispute between the parties. Pl.'s Opp. Mot. Dismiss at 10–12 (citing *Reflectone*, 60 F.3d 1572). This argument is inapposite. *Reflectone* held that a non-routine request for payment need not be in dispute in order to constitute a claim within the meaning of the CDA. *Id.* Danka's request to USPFO about the termination of the contract may well have been non-routine. In *Reflectone*, however, the United States Court of Appeals for the Federal Circuit held that in order to constitute a claim under the CDA the request must be embodied in a written demand for a sum certain as a matter of right. *Id.* at 1575. Danka has not shown that it made a written demand at all, routine or otherwise, to the contracting officer for a sum certain. The relevant authorities, including the *Reflectone* decision, are in agreement that such a demand is required in order to invoke this Court's jurisdiction. *Id.* at 1575–76.

Danka argues that a claim submitted to the contracting officer implicitly requests a final decision. Pl.'s Opp. Mot. Dismiss at 12–13. This argument is inapposite. The record reflects that Danka did not submit any written demand for the $109,040.91 it now seeks. The letters exchanged by the parties discuss Danka's contention that the Government was liable for penalties, but no mention was made of any sum certain. (Letter from Martínez to del Castillo of Aug. 9, 2002; Letter from Rentas to Martínez of Sept. 4, 2002; Letter from Martínez to Rentas of Sept. 16, 2002.) Danka's argument that a request for a final decision is implicit in a written demand fails to acknowledge that

Danka made no written demand for a sum certain.

## CONCLUSION

Because Danka has failed to establish that it submitted a claim for $33,376.85 to the contracting officer, or that the contracting officer received the claim, and because Danka neither specified a sum certain in the amount of $109,040.91 in a written demand, nor certified such a demand, Danka failed to invoke the jurisdiction of this Court under 28 U.S.C. § 1491(a)(2). The Government's motion to dismiss is therefore GRANTED. The Clerk is instructed to enter judgment dismissing plaintiff's action without prejudice pursuant to RCFC 12(b)(1).

IT IS SO ORDERED.